**Esther M. PADWAY, Plaintiff-Appellant,**

v.

**Peter G. PALCHES, et al.,
Defendants-Appellees.**

No. 80–4102.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1981.

Decided Jan. 11, 1982.

Laurence F. Padway, Padway & Padway, Oakland, Cal., for plaintiff-appellant.

Shand Stephens, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.

Before DUNIWAY and FERGUSON, Circuit Judges, and HOFFMAN,* District Judge.

DUNIWAY, Circuit Judge:

Appeal from a summary judgment for defendants in an action for sex discrimination in the payment, reassignment and discharge of a school principal. We reverse in part and remand.

### I. *The Nature of the Action.*

Esther M. Padway was principal of an elementary school, hired by the Mill Valley California School District on July 1, 1973. On February 20, 1978, the District's Board of Trustees met in executive session and unanimously voted to reassign Padway and another principal to teaching duties. On

March 13, 1978, the superintendent of schools of the district, Peter Palches, recommended to the Board that it give notice of termination to Padway and eight other teachers because of a shortage of money. The Board voted to do this and sent notices on the next day. The nine teachers requested a hearing before an administrative law judge. On May 3, 1978, he determined that there had been cause to dismiss Padway and seven of the other eight. He found they had less seniority than other employees.

Padway claimed that her reassignment and termination were the result of sex discrimination and brought this action against the superintendent, the five members of the Board of Trustees in both their individual and official capacities, the Board itself, and the district. Padway also claimed to have received less pay over the years than she would have received had she been a man. She asserted a broad range of statutory and common law bases for her claims. The district court gave summary judgment for the defendants on all federal claims and dismissed the pendent state claims. Here, Padway appeals the dismissal of some of the claims based on Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, on 42 U.S.C. § 1983 and § 1985(3), and on the Equal Pay Act, 29 U.S.C. § 206(d). Since we reverse on some of these claims we also direct reinstatement of the pendent state claims.

### II. *The Title VII Claims based upon the Reassignment and Discharge.*

#### A. *Liability.*

▮ Padway showed, by depositions and in declarations valid as affidavits under 28 U.S.C. § 1746, that Superintendent Palches has had difficulties in dealing with women in his job. The defendants concede that Padway has succeeded in raising a question as to the Superintendent's "attitudinal dispositions," which we take to be legalese or bureaucratese for his being prejudiced against women, or, in one meaning of the current vernacular, "sexist."

---

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Palches wrote a letter to Padway, reading in part:

This is in response to your request for a statement of the reasons for your reassignment from your position as Principal.

The action of the Board was based upon my recommendation that you be reassigned for the following reasons:

1. I have insufficient trust in your judgment in handling the various complicated situations that arise in schools.

2. You cannot accept suggestions that you take steps to improve your ability to listen to what other people are saying and improve your communications with them. Rather than accepting evaluation comments as worthy of consideration and as the basis for some type of constructive change, you simply respond defensively.

You possess many fine qualities which have helped you to perform your duties as principal. The District is not charging you with incompetence, but rather it is exercising the discretion it has under the law to choose the people who will carry out its administrative responsibilities. There must be a strong bond of confidence between the Principal and the Superintendent and the Governing Board. Unfortunately, this is lacking.

A deposition by one K. Ibanez contained the following testimony:

And I said, you know, "Well why did you write a letter like that? I can't understand it."

He [Palches] said—he was mumbling, and the conversation went on. I said it two or three times at least.

Finally, his response was *"I wanted to be sure that she [Padway] wouldn't be a principal in Mill Valley again." And he sort of paused and said, "or any other place."* (emphasis added)

One of the defendant trustees is said to have made, at a public meeting at which the Board voted to reassign Padway, this statement:

We have two choices. We can either support our superintendent or we can fire our superintendent. It is not on the agenda tonight to fire the superintendent and therefore it must mean we trust his judgment. I don't know how much more candor can be stated than that.

Defendants argue that this evidence is insufficient to raise an inference that Padway was discharged because Palches was prejudiced against her as a woman. We do not agree. Palches' "attitudinal dispositions," the letter giving reasons for dismissal, the statement of the Trustee, the background of legal and customary relations between the superintendent and the Board, would all allow a finder of fact to conclude that the superintendent played a large role in the decision to reassign Padway and that prejudice against women was the real reason for the reassignment and discharge. *See Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission*, 9 Cir., 1981, 659 F.2d 903, at 910–912. The District would be liable, on the theory of respondeat superior, for the actions of Palches, an employee who is authorized to recommend hiring or firing. *Miller v. Bank of America*, 9 Cir., 1979, 600 F.2d 211.

In response to Padway's evidence, each trustee filed an affidavit denying that, in reassigning Padway, the trustee had relied on Palches, and giving reasons why the trustee voted to reassign. The trial judge relied heavily on this evidence. If the case had been tried by the judge, and he had based his decision on comparable testimony, we might well have affirmed under the "unless clearly erroneous" rule (Rule 52(a), F.R.Civ.P.). But we deal here with a summary judgment, and the trustees' evidence merely raised conflicts as to material facts, thus making summary judgment improper. (Rule 56, F.R.Civ.P.)

Each of the Trustees gave, as one reason for reassigning Padway, her sending to each Trustee a mailgram protesting the reassignment of a particular teacher to a classroom in her school. It seems clear that her First Amendment right to free speech protected the act of communication, especially when the communication was to the Trustees rather than to a newspaper. The

depositions of the Trustees do not say that she made a public protest at their decision but only that her act showed a lack of tact and discretion. On the record before us, we cannot say that the interest of the School District outweighed her First Amendment rights. *See generally, Pickering v. Board of Education*, 1968, 391 U.S. 563, 568–70, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811. If her action was protected on balance and played a substantial part in her reassignment then the question arises of whether she would have been reassigned but for that action. We do not think that these questions can be settled by summary judgment on the present record.

### B. *Damages.*

■ We note that 42 U.S.C. § 2000e–2 speaks of unlawful practices by the employer, and not of unlawful practices by officers or employees of the employer. Back pay awards are to be paid by the *employer*. 42 U.S.C. § 2000e–5(g). The individual defendants cannot be held liable for back pay. *See Clanton v. Orleans Parish School Board*, 5 Cir. Unit A, 1981, 649 F.2d 1084, 1099.

■ In this case, however, Padway asked for compensatory and punitive damages rather than for back pay. In *Shah v. Mt. Zion Hospital and Medical Center*, 9 Cir., 1981, 642 F.2d 268, 272, we held that damages for emotional distress cannot be recovered under Title VII. The rationale of that decision is that 42 U.S.C. § 2000e–5(g) provides only for equitable relief, including back pay. It does not provide for damages. The very detailed provisions of § 2000e–5 almost compel the conclusion that Congress intentionally left out any provision for either general or punitive damages, and that is our conclusion. *See also Harrington v. Vandalia-Butler Board of Education*, 6 Cir., 1978, 585 F.2d 192, 194–197; *Pearson v. Western Electric Co.*, 10 Cir., 1976, 542 F.2d 1150, 1151–1153; *Great American Fed. S. & L. Assn. v. Novotny*, 1979, 442 U.S. 366, 374–375 & n.17, 99 S.Ct. 2345, 2350–2351 & n.17, 60 L.Ed.2d 957.

### III. *Constitutional Claims based upon Reassignment and Discharge.*

Padway claims to have been denied due process and equal protection contrary to the Fifth and to the Fourteenth Amendments to the United States Constitution, and she seeks redress under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

■ We note that in the second count of the complaint, based upon 42 U.S.C. § 1983, Padway said "The Municipal Defendants and individual defendants are named herein [referring to the second count only] solely for the purposes of securing declaratory relief." All the defendants in this case are either municipal or individual. Thus the only relief sought under § 1983 is declaratory relief. In any event, the school district is not liable under § 1983 where the sole theory of liability is respondeat superior. *Monell v. New York City Department of Social Services*, 1978, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611; *May v. Enomoto*, 9 Cir., 1980, 633 F.2d 164, 167 n.3.

The third count, which we interpret to be based on 42 U.S.C. § 1985(3), (it refers to § 1987) is worded more broadly: "To the extent that the individual Defendants are named in this count other than for declaratory relief, Plaintiff alleges that said Defendants acted outside their proper authority. The Municipal Defendants and individual Defendants to the extent that they acted within their proper authority, if any, are named in this count solely for the purpose of obtaining declaratory relief." Thus, the relief sought from the individual defendants under § 1985(3) is both declaratory and monetary. The relief sought from the municipal defendants under § 1985(3) is declaratory only.

We doubt that Padway has a cause of action under § 1985(3). The only allegations of conspiracy concern the activities of the defendants and no others. The individual defendants were all the Trustees and an employee of the school district. We doubt that their actions amounted to a conspiracy. *See Girard v. 94th St. and Fifth Ave. Corp.*, 2 Cir., 1976, 530 F.2d 66, 70–72. However, we have never held that it is impossible to

have a conspiracy between trustees (or directors) and employees of a single corporation. It may be possible under some circumstances. The parties have not addressed this issue in their briefs. It may be that this issue can be properly resolved on summary judgment after further argument before the district court, either on the present record or after further discovery. We note that this is the only federal claim upon which the individual defendants could conceivably be liable for money damages.

■ It is not possible to use § 1985(3) to redress violations of Title VII. *Great American Fed. S. & L. Assn. v. Novotny, supra,* 422 U.S. at 375–378, 99 S.Ct. at 2351–2352. However, because the school district is a subdivision of the state, discrimination by it on the basis of sex would be a violation of the Constitution, *Personnel Administration of Massachusetts v. Feeney,* 1979, 442 U.S. 256, 271–273, 99 S.Ct. 2282, 2292–2293, 60 L.Ed.2d 870, and might be redressed under either § 1983 or § 1985(3) if these provisions were otherwise appropriate. It is possible to use § 1985(3) to attack conspiracies against a class defined by sex. *Life Insurance Co. of North America v. Reichardt,* 9 Cir., 1979, 591 F.2d 499, 505.

### IV. *The Claims based upon the Equal Pay Act.*

■■ The fourth count of the complaint alleges that the District denied females equal wages and retirement benefits in violation of the Equal Pay Act, 29 U.S.C. § 206(d). The claim under the Equal Pay Act was made against only the Board and the District. In the proceedings below the defendants claimed that state sovereign immunity barred any claim against the District under the Equal Pay Act. The district judge was clearly correct in dismissing this defense. *See Mt. Healthy School District v. Doyle,* 1977, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471.

There are three key documents relating to this issue: (1) a declaration number 2, by Palches, to which are attached exhibits showing the salaries actually paid to administrators from the year 1973–74 to the year 1977–78 and the salary scale for 1977–78; (2) an exhibit to a declaration, by Padway, which shows salary scales for the years from 1973–74 to 1976–77, and gives some indication of individual salaries derived from these scales; (3) a declaration number 3, by Palches, which goes into some detail on the salary history of Padway and two other administrators. In their briefs neither party mentions this third document. It appears that it was not pointed out to the district court judge either. This was unfortunate. He managed to reach through arduous reasoning from indirect evidence the conclusions that it plainly and directly supports. This third document gives some indication of the negotiations that led to the initial contracts for the three administrators. It contains copies of the original contracts. It shows how their actual salaries were reached and why they are different. The three documents together present a clear and coherent explanation that is not controverted by any other evidence.

It is undisputed that Padway entered the system at step 2 on July 1, 1973, advanced one step each year until reaching step 6 and then remained at step 6. (The next step in the system is step 11 which is apparently reached after ten years service.) Padway also received $250.00 each year because she held a masters degree. The actual salary received by Padway is shown in Palches' declaration number 2. It fits the model outlined above to within a few dollars each year. (We have noticed a minor error in the computation made by the district court at this point.) In order to prevail under Title VII Padway would have to show either that her sex was a factor in causing her initial placement at step 2 or else that but for her sex she would have been paid more than was dictated by the salary schedule.

Palches' declaration number 2 states: "No differential in pay is made on the basis of sex." To this conclusory statement we must add the details of declaration number 3. There Palches says that the Board initially offered Padway a position at step 1 because she was considered not to have any

previous administrative experience but that in the final negotiations she managed to persuade the Board to offer step 2.

Padway complains that over the years she has been paid less than the two male administrators who were appointed at about the same time. The documents show that one of these was appointed at step 3 because of his previous experience and because he was considering other job prospects. The District decided to make him its best offer in order to persuade him to come. The other male was a middle school principal and his salary was calculated in a different manner entirely. Over the years the two men also received $500.00 each per annum as holders of doctorates and special loadings for special positions.

It is possible to argue in the abstract that the two individual men did better in their initial negotiations and were given better paying assignments because they were men. We do not doubt that such illegal and unfair things happen. However, the plaintiff in this case has not come forward with any evidence that this was so here. Summary judgment for the defendants on the claims arising from level of compensation was proper.

#### Conclusion.

We reverse the summary judgment on the first count, the Title VII claim based upon the reassignment and discharge, but find no possible monetary liability under that count against the individual defendants, and to that extent affirm the judgment in favor of the individual defendants on that count.

We reverse the judgment on the second count for declaratory judgments under 42 U.S.C. § 1983 based upon the reassignment and discharge.

We reverse the judgment on the third count for declaratory relief and damages under 42 U.S.C. § 1985(3) as to the individual defendants and for declaratory relief as to the other defendants, although we doubt that this action will in the end succeed. We direct reinstatement of the pendent state claims under the sixth, seventh, eighth,

ninth and tenth counts, but express no opinion on the merits of any of those counts. In all other respects the summary judgment is affirmed, including specifically the judgment on the fourth and fifth counts.

We remand for further proceedings consistent with this opinion.