Aamer SATTAR, Plaintiff,

v.

UNOCAL CORPORATION, John Forbes, Tom Myers, and Juan Muñoz, Defendants.

No. C–91–3351 WHO.

United States District Court, N.D. California.

April 12, 1993.

John L. Burris, John L. Burris Law Offices, Dorothy D. Guillory, Dorothy Guillory Law Offices, Oakland, CA, for plaintiff.

Henry D. Lederman, Littler Mendelson Fastiff & Tichy, Walnut Creek, CA, Harvey Klee, Union Oil Co. of California, Los Angeles, CA, for defendants.

## OPINION

ORRICK, District Judge.

Defendants' motions for judgment as a matter of law, for remittitur and/or for a new trial, to amend the judgment, and for relief from operation of judgment having come before the Court, the Court having considered the briefs and having had the benefit of oral argument, grants in part the motion for judgment as a matter of law, and orders the entry of judgment for defendant John Forbes on plaintiff's first, second, and third causes of action for the reasons hereinafter stated. The Court also grants the motion to amend the judgment, and denies the motions for a new trial, remittitur, and relief from operation of judgment.

### I.

Plaintiff, Aamer Sattar, was an employee of defendant Unocal Corporation ("Unocal"). He was terminated from his employment at Unocal's Rodeo chemical plant after an altercation in the workplace with a co-worker, defendant Juan Muñoz. He brought this action against Unocal, Muñoz, Tom Myers, another co-worker, and John Forbes, his su-

pervisor, alleging that his treatment at Unocal had been motivated by discrimination based on his race (Arab), his nation of origin (Sri Lanka), and his religion (Muslim). Sattar stated five causes of action: (1) discriminatory discharge based on race, (2) harassment based on national original, (3) discriminatory discharge based on national origin, (4) harassment based on religion, all in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, and (5) violation of his right to pursue employment without discrimination under Article I, Section 8 of the Constitution of the State of California.

Before the case went to the jury, the Court dismissed all federal causes of action against Myers and Muñoz. The jury was asked to find only if Unocal and/or Forbes were liable under the first four causes of action, and if all defendants were liable under the fifth, state-based, cause of action. The Court instructed the jury as follows:

> To recover against defendant Forbes under his Title VII claims, plaintiff must prove that Forbes was an agent of Unocal Corporation. He may prove that Forbes was an agent by showing it was more likely than not that Forbes was his immediate supervisor or a person with authority over personnel decisions.

Instruction No. 5.

> [T]o prove that defendant Forbes acted unlawfully with respect to his termination, plaintiff must prove by a preponderance of the evidence that Forbes was an agent of Unocal Corporation as described in Instruction No. 5 and that Forbes participated in the termination of plaintiff.

Instruction No. 9.

In answer to questions on the Special Jury Verdict regarding the first and third causes of action, the jury found that Sattar was not discharged because of intentional racial or national origin discrimination by Unocal. They did, however, find that Sattar was discharged because of intentional racial and national origin discrimination by Forbes.

The jury awarded Sattar $20,000 for the emotional distress he suffered as a result of his racially motivated discharge by Forbes,

$20,000 for the emotional distress he suffered as a result of his national origin motivated discharge by Forbes, $35,802 in back pay, and $33,000 in front pay.

As indicated in the answers in the Special Jury Verdict regarding the second and fourth causes of action, the jury also found that Sattar was not unlawfully harassed on account of his national origin or religion by Unocal, or on account of his religion by Forbes. It found, however, that he was unlawfully harassed by Forbes on account of his national origin, and it awarded Sattar $20,000 for emotional distress.[1]

Finally, the jury found for defendants Unocal and Muñoz on the fifth cause of action, but found that Sattar's right to pursue his employment was violated because of race or national origin by Forbes and Myers and awarded him $20,000 from each man.

The jury also found that the wrongful acts done by Unocal employees Forbes and Myers were not authorized or approved by an officer or director of Unocal or by a person with authority to make decisions that determined corporate policy.

## II.

■ Defendants argue that individuals cannot be liable for monetary damages under Title VII, and that no claim under Title VII against Forbes should have gone to the jury. They, therefore, renew their motion for judgment as a matter of law, first made at the close of the evidence, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure and request remittitur of the damages awarded against Forbes under Title VII, pursuant to

Federal Rule of Civil Procedure 59(e), which allows amendment of a judgment.[2]

Title VII, 42 U.S.C. § 2000e(b), defines "employer" as

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person* [.]

(Emphasis added.) Pursuant to this provision, the Court instructed the jury that if they found that Forbes was an agent of Unocal, it could assess damages against him. In 42 U.S.C. § 2000e–5(g), Title VII provides for recovery of back pay "payable by the employer." Further, in 42 U.S.C. § 1981a(a)(1), as newly revised, the statute provides for compensatory and punitive damages as authorized by § 1981a(b) against any respondent who violated the provisions of 42 U.S.C. § 2000e–2 or 3, and "respondent" is defined in 42 U.S.C. § 2000e–5(b) as *"employer,* employment agency, labor organization, or joint labor-management committee[.]" (Emphasis added.) Thus, the statutory language can be traced to read that "any agent" may be liable for back pay and compensatory and punitive damages.[3]

Defendants renew their argument, first made in objections to the instructions, that the Court erred in including Forbes in the category of "any agent." They point to the terms of the newly enacted § 1981a(b)(3), which limits recovery for "future pecuniary losses [front pay], emotional pain, suffering, inconvenience," to three separate categories of respondents, according to their number of employees. Defendants argue that this subsection indicates that "respondent," as used

---

**1.** As described in the text, the jury found Forbes liable on three of the four Title VII claims. The Court analyzes whether any of these four claims should have been allowed to go to the jury against an individual. Because the jury found Forbes not liable on the fourth causes of action, however, the Court's holding that the Title VII claims should not have been included in the Special Jury Verdict does not require any amendment to the judgment as to the fourth cause of action.

**2.** These damages total $128,820 ($60,000 for emotional distress, $35,802 back pay, and $33,000 front pay).

**3.** The Court notes that while the definitions in 42 U.S.C. § 2000e(b) apply only to that subchapter of the United States Code, of which 42 U.S.C. § 1981a is not a part, § 1981a refers to 42 U.S.C. § 2000e to give meaning to its grant of permission to complainants to seek compensatory and punitive damages under § 2000e–5 against a "respondent" acting in violation of § 2000e–2 or 3. "Respondent" can only be interpreted by reference to § 2000e and, thus, to the use of the word "employer" in the subchapter controlled by the definition of § 2000e(b).

in § 1981a, could not include individual employees because employees do not have employees, and Congress could not have intended to cap compensatory damages on large employers, but allow unlimited damages against employees who were acting as their employer's agent.

This apparent contradiction between the definition of employer in § 2000e and the damages rules established in § 1981a is further complicated by the Ninth Circuit case of *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982), which held that under the previous Civil Rights Act, "individual defendants cannot be held liable for back pay." Padway had sued members of a government agency. Referring only to §§ 2000e–2 and 2000e–5(g), the Court found that because those sections refer only to the "employer," not its officers or employees, individuals are not liable. The court did not discuss § 2000e(b) or how the definition of employer interacts with § 2000e–5(g). Sattar urges that *Padway* should be limited to its facts and, thus, to damages against public employees. Because, however, the Ninth Circuit did not discuss the implication of its holding, *i.e.*, that individual employees cannot be considered "any agent" of the employer, it is difficult to understand how *Padway* supports a distinction between public employees acting as agents and private employees acting as agents.

Indeed, two District of Nevada courts have declined to limit *Padway* based on such a distinction. *Seib v. Elko Motor Inn, Inc.*, 648 F.Supp. 272, 274 (D.Nev.1986); *Pree v. Stone & Webster Eng'g Corp.*, 607 F.Supp. 945, 950 (D.Nev.1985). Each court applied *Padway* to private employers, and held that individuals could not be liable for back pay. This Court, like the courts that decided *Seib* and *Pree*, can find no reason to distinguish public and private employees acting as agents for their employer. This Court is bound by *Padway*, and nothing in the new Civil Rights Act of 1991 disturbs the Ninth Circuit's holding that individual employees, despite their inclusion in 42 U.S.C. § 2000e, cannot be liable for back pay under § 2000e–5(g). Therefore, the Court remits the back pay award against Forbes.

III.

■ The permissibility of § 1981a damages against an individual employee who has been found to have been acting as the agent of the employer, however, is an open question in the Ninth Circuit. In ruling *sua sponte* to dismiss the Title VII claims against Myers and Muñoz, and in overruling defendants' objection to Instruction No. 5, the Court cited two decisions from other circuits. The Sixth Circuit has allowed a cause of action against an employer based on the actions of a supervisor who initiated a disciplinary action that lead to a discriminatory dismissal, even though the supervisor did not play a role in the final decision to dismiss the plaintiff. *Simpson v. Diversitech Gen., Inc.*, 945 F.2d 156 (6th Cir.), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1072, 117 L.Ed.2d 277 (1992). While supporting the Court's agency instruction, *Diversitech* is silent on the issue of damages against individual defendants. The Fifth Circuit has found that public officials are "employers" under Title VII, and can be liable for back pay under 42 U.S.C. § 2000e, but only in their official, not individual, capacities. *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir.1990) (supervisor can be liable in official capacity but not in individual capacity). *Harvey*, however, did not address the question of damages under § 1981a, and is directly contrary to *Padway*. Neither case, therefore, provides a possible resolution of the question before this Court.

The reference to § 2000e–5(g) in § 1981a(a)(1), "the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, *in addition to any relief authorized by [42 U.S.C. § 2000e–5(g)], from the respondent,*" is some evidence that Congress intended to provide damages against the same categories of persons under § 1981a as under § 2000e–5(g). (Emphasis added.) According to that reasoning, because the Ninth Circuit has excluded recovery from individuals under § 2000e–5(g), recovery from individuals is also excluded under § 1981a.

■ If individual employees are not liable for any type of damages under Title VII, then what is the meaning of the language in 42 U.S.C. § 2000e, which includes agents of

the employer in "employer"? It is, of course, a principle of statutory construction that a Court should not construe a statute so as to render parts of it meaningless. *Hughes Air Corp. v. Public Utils. Comm'n*, 644 F.2d 1334, 1338 (9th Cir.1981). Defendants argue that this language is not meant to extend personal liability to individual employees, but to create *respondeat superior* liability in the employer. They cite *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (the use of the term "agent" "evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible").

Presumably, they mean to imply that because the definition of "employer" includes "agent," the employer is only liable for actions of its agents, and not of employees or third parties who were not acting as its agents. This implication leads to redundancy. Any corporate employer can act, and accrue liability, only through individuals, and it is to the law of agency and corporations that courts turn when they wish to discover if an employer is liable. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir.1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents[.]"); *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1369 (9th Cir.1992) (corporation liable for actions of employees within scope of employment). If "any agent" is read solely as a limit on "employer," then "any agent" and "employer of more than fifteen persons" are redundant, rather than separate concepts, as implied by their separate listing in the definitions section. *Meritor* does not necessarily lead to defendants' interpretation. The opinion discusses the "any agent" language of Title VII only from the perspective of testing when an *employer* is liable for the actions of its employees, and rejected the Court of Appeals strict liability standard for standard agency principles. 477 U.S. at 72, 106 S.Ct. at 2408.

The case is silent on whether any Title VII claim was made against the individual supervisor in question and, if so, whether damages could be awarded against him. Thus, it did not reach the issue of whether in including "any agent" within the definition of employer, the drafters of Title VII logically included "any agent" in the sections holding an "employer" liable for back pay, and now compensatory and punitive damages.

Thus, "any agent" does not refer solely to a limit on employer liability, and yet individuals are not liable for back pay under *Padway*, despite the any agent language. Other cases offer two alternative interpretations of the statute that provide meaning to all parts of Title VII, and are consistent with *Padway*.[4]

This Court finds that the use of the word "agent" has meaning in two contexts: (1) when injunctive relief is sought against an individual employee, and (2) when an agent of the employer is itself an entity, not an individual.

**A.**

■ In *Pree*, while finding that *Padway* precluded a back pay award against an individual defendant, the court mentioned that injunctive relief would be available against him had he not left his job. 607 F.Supp. at 950 ("[o]nly injunctive relief would be available against the [individual] employee"). Interpreting the statute to find that individual agents of the employer may be the subject of injunctive relief, but not monetary relief, also gives meaning to the statute and is consistent with *Padway*. Because Sattar did not seek injunctive relief against any defendant, there is no reason for this Court to pursue this possibility any further.

**B.**

■ In *Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct.

---

4. Defendants also argue that the omission of the word "agent" from § 1981a should be read as a deliberate decision by Congress to deny back pay recovery from individuals, citing *Estate of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir.1991) ("Congress is presumed to act intentionally and purposely when it includes language in one sec-

tion but omits it in another"). This argument, however, seems less than logical when construing Title VII, in which Congress specifically defined its terms in a single section so that each time the drafters used the word "employer," they did not have to say "any agent" as well.

1370, 55 L.Ed.2d 657 (1978), the Supreme Court recognized the words "any agent" in 42 U.S.C. § 2000e($l$) as encompassing an administrative board. *See also id.* at 718 n. 33, 98 S.Ct. at 1380 n. 33 ("[w]e do not suggest, of course, than an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells"). *See also Morgan v. Safeway Stores, Inc.,* 884 F.2d 1211, 1214 (9th Cir.1989) ("[a]n employer ... cannot avoid title VII liability by delegating discriminatory programs to third parties," finding that a credit union was not an agent of a grocery store chain and, therefore, not an employer under title VII). The implication of these cases is that "any agent" may be an *entity,* distinct from the employer, and yet still liable under Title VII even though it is not directly the complainant's employer. Such an entity, as an agent, would be liable for back pay under § 2000e–5(g), and under the Civil Rights Act of 1991, for compensatory and punitive damages, subject to caps based on the size of the agent entity. Thus, each part of the statutory framework would have satisfied a noncontradictory meaning. Further, this analysis is consistent with the Ninth Circuit's determination in *Padway* that individuals are not the intended target of § 2000e. Because the Court finds this analysis of the disputed statutory sections and relevant Supreme Court and Ninth Circuit precedent persuasive, it finds that, as a matter of law, defendant Forbes could not be liable for damages under 42 U.S.C. §§ 2000e–5(g) and 1981a(a) for race discrimination, national origin discrimination, or racial harassment.

Because the Court finds that judgment should be entered for Forbes as a matter of law, there is no need to address defendant's motions to remit damages assessed against Forbes as duplicative, or to order a new trial.

### IV.

Accordingly,

IT IS HEREBY ORDERED that:

1. The motion for judgment as a matter of law is GRANTED in part, and judgment is granted to defendant Forbes on the first, second, and third and causes of action.

2. The motion to amend the judgment is GRANTED. The Judgment on Verdict, entered in the civil docket on January 19, 1993, is amended as follows: Questions 2, 7, 8, 10, 15, 16, 17, 18, 21, 22, 25, and 26 are stricken.

3. The motions for remittitur, for relief from operation of judgment, and for new trial are DENIED.