Robert W. **HAMLIN** and Jeanne
E. Hamlin, Plaintiffs,

v.

**CHARTER TOWNSHIP OF FLINT, Charter Township of Flint Fire Department, Greg Wright, and Sally Shaheen Joseph, Jointly and Severally, Defendants.**

No. 95–CV–75425–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 12, 1997.

Dennis L. Gabrian, Bloomfield Hills, MI, for Plaintiffs.

Norbert B. Leonard, Troy, MI, for Defendants.

### OPINION AND ORDER DENYING DEFENDANTS' MOTION TO REDUCE JURY VERDICT

ROSEN, District Judge.

### I. INTRODUCTION

On October 27, 1995, Plaintiffs Robert Hamlin and his wife Jeanne filed an action alleging, *inter alia*, that Defendants Charter Township of Flint (the "Township"), Charter Township of Flint Fire Department (the "Fire Department"), Fire Chief Greg Wright, and Township Supervisor Sally Shaheen Joseph terminated Mr. Hamlin in violation of the American with Disabilities Act, 42 U.S.C.A. § 12111 *et seq.* (the "ADA"), and the Michigan Handicapper's Civil Rights Act, M.C.L. § 37.1101 *et seq.* (the "MHCRA"). On December 3, 1996, a jury returned a verdict in favor of Plaintiffs, awarding $86,650 for past damages and $413,350 for future damages.

On December 16, 1996, Defendants filed a Motion to Reduce the Jury Verdict in this matter arguing that, according to the testimony at trial, the Fire Department had more than 14 and fewer than 101 employees at the

time of Hamlin's termination. Therefore, pursuant to 42 U.S.C.A. § 1981a(b)(3), Defendants conclude that the Court should limit the future damages awarded to $50,000. Plaintiffs' Response contends that the jury award is comprised of front pay which is not subject to limitation under § 1981a(b)(3). The underlying facts in this matter were discussed at length in the Court's Opinion and Order denying Defendants' Motion for Summary Judgment, *Hamlin v. Charter Township of Flint,* 942 F.Supp. 1129 (E.D.Mich. 1996), which the Court incorporates by reference.

### II. ANALYSIS

Plaintiffs' suit under the ADA subjected Defendants to liability under 42 U.S.C.A. §§ 1981a and 2000e–5(g). Thus, Defendants argue that, because the testimony at trial indicated that the Fire Department had less than 101 and more than 14 employees, the jury verdict here for $413,350 in future damages should be reduced to $50,000, pursuant to 42 U.S.C.A. § 1981a(b)(3)(A) which provides that:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
> > (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000.

However, at § 1981a(b)(2), the statute states that "[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g) ]." Section 706(g) provides that:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court

may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or *any other equitable relief as the court deems appropriate.*

(*Emphasis* added). Many courts, including the Sixth Circuit, have, pursuant to the "other equitable relief" language, awarded front pay as an alternative remedy to reinstatement under this statute. *See, e.g., Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985). Therefore, relying on § 706(g), Plaintiffs contend that the future damages award here is an equitable award of front pay which is not limited by § 1981a(b)(3).

### A. *Principles of Statutory Construction.*

Defendants' Motion and Plaintiffs' Response require the Court to read together §§ 1981a(b)(2) and (3) with reference to § 706(g) of Title VII. Therefore, the Court must first turn to principles of statutory construction.

A "familiar canon of statutory construction is that *the starting point for interpreting a statute is the language of the statute itself.* Absent a clearly expressed legislative intention to the contrary, *that language must ordinarily be regarded as conclusive.*" *Consumer Product Safety Com'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (*emphasis* added). Moreover, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Finally, "a court should 'give effect, if possible to every clause and word of a statute.'" *Moskal v. United States,* 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990) (quoting *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955)).

### B. *42 U.S.C.A. § 1981a(b)(2) and (3).*

With these maxims in hand, the Court will turn to the language of § 1981a. First, at subsection (a), § 1981a provides that:

In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 ... of the Civil Rights Act of 1964 [42 U.S.C.A. § ... 2000e–5 ... ] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 ... ) against a respondent who engaged in unlawful intentional discrimination ... against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g)....

42 U.S.C.A. § 1981a(a)(2). Then in subsection (b), part (2), the statute states that:

Compensatory damages awarded under this section *shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g)* of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g) ].

42 U.S.C.A. § 1981a(b)(2) (*emphasis* added). The Court observes here that, in relevant part, § 706(g) reads as follows:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... *or any other equitable relief as the court deems appropriate.*

42 U.S.C.A. § 2000e–5(g). Finally, § 1981a provides that:

The sum of the amount of compensatory damages awarded under this section for *future pecuniary losses,* emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party— (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000....

42 U.S.C.A. § 1981a(b)(3)(A) (*emphasis* added). The question presented to the Court, therefore, is whether the front pay awarded to Plaintiffs is "compensatory damages ... for future pecuniary losses" or whether it is "any other type of relief authorized under section 706(g)"—i.e, "any other equitable relief that the court deems appropriate." This is a question of first impression for the Court and one on which there is no Court of Appeals precedent.

Congress did not define the phrase "future pecuniary losses" in § 1981a or in any other statute of which the Court is aware, thus, the Court must give it its "ordinary, contemporary, common meaning." *Perrin*, 444 U.S. at 42, 100 S.Ct. at 314. According to Webster's Dictionary, these three words are defined as follows:

1. Future: existing or occurring at a later time;

2. Pecuniary: consisting of or measured in money;

3. Losses: an amount that is lost.

Webster's Ninth New Collegiate Dictionary, pp. 500, 866, 706 (1988). Therefore, the Court finds that the ordinary meaning of "future pecuniary losses" is an amount of money lost at a later time.

The award at issue here is one for "front pay." In the employment law context, front pay is widely defined as the salary that an employee would have received had he or she not been subjected to the unlawful discrimination of his employer, subject to the employee's mitigating his or her damages. *See, e.g., Shore v. Federal Express Corp.*, 42 F.3d 373, 377–78 (6th Cir.1994). The Sixth Circuit's treatment of front pay, however, makes it difficult to define front pay categorically as either an equitable remedy or a legal remedy. Specifically, although it is clear that

under Sixth Circuit precedent it is for the court to determine if front pay is appropriate in lieu of reinstatement, thereby making front pay appear to be an equitable remedy, it is for the finder of fact, subject to several specific factors, to determine the magnitude of the monetary recovery, thereby making front pay look like a legal remedy. *See, e.g., Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1234–35 (6th Cir.1996). This process is consistent with how the front pay in this matter was awarded.

██ As this discussion indicates, the question that this matter presents is a difficult one. First, the Court finds that front pay is by definition a "future pecuniary loss" because it is a monetary award for the salary that the employee would have received but for the discrimination. On the other hand, courts have awarded front pay as an alternative to reinstatement under § 706(g) of Title VII. However, front pay is not specifically "authorized" by § 706(g) and the Sixth Circuit's treatment of front pay makes it resemble, in many ways, a legal remedy. Moreover, the Court must give substance and meaning to the phrase "future pecuniary losses" and not render it meaningless. Indeed, if the Court were to construe "future pecuniary losses" as not to include front pay, the Court would impermissibly render the phrase meaningless because the statute separately "defines" compensatory damages for "... emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses...." Therefore, the Court concludes that front pay is subject to the caps on future pecuniary losses as provided for in § 1981a(b)(3) because front pay is a "future pecuniary loss" and it is not authorized by the plain language of § 706(g) itself.[1]

---

**1.** Because the Court must, absent ambiguity, read the statute on its face and interpret it in light of its own plain language, the Court did not rely on the legislative history. However, the Court does note that when Senator Kennedy announced that a compromise had been reached on the Civil Rights Act of 1991, he stated that under § 1981a "[c]ompensatory damages do not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964, including front pay." 137 Cong.Rec. § 15234 (daily ed.

Oct. 25, 1991) (statement of Sen. Kennedy) (emphasis added). Moreover, on November 7, 1991, when the House considered this legislation after the Senate had already passed it, Representative Edwards stated in his presentation of the Senate bill that "[d]amages awarded under [§ 1981a] cannot include remedies already available under Title VII including backpay, the interest thereon, front pay, and any other relief authorized under Title VII." 137 Cong.Rec. H9527 (daily ed. Nov. 7, 1991) (statement of Rep. Edwards). To the

### C. Defendants Have Failed to Show How Many Employees There Are for the Purposes of § 1981a(b)(3).

Having found that the front pay award in this matter is subject to the caps in § 1981a(b)(3), the Court must determine at what amount the award should be capped. Defendants have argued that because the Fire Department has more than 14 and fewer than 101 employees for the purposes of § 1981a(b)(3), Plaintiffs' front pay award should be capped at $50,000, pursuant to § 1981a(b)(3)(A).

As the Court has interpreted it, § 1981a(b)(3)(A) provides that a respondent who has more than 14 and fewer than 101 employees is only liable for front pay damages up to $50,000. Implicit in Defendants' argument, therefore, is the assumption that the Fire Department is the "respondent" for the purposes of § 1981a(b)(3)(A). However, Plaintiffs sued both the Fire Department and the Township. Moreover, as the record made clear, it is the Township, and not the Fire Department, that pays the Fire Department's bills and funds it.[2] The record also demonstrates that the Township is intimately involved in the Fire Department's personnel decisions. Finally, on its face, the purpose of § 1981a(b)(3) is to limit liability for compensatory damages based on the relative size of the employer, as a proxy for its ability to pay. Thus, the Court finds that in this matter, the size of the Fire Department is irrelevant because the Township is the employer to look to in order to determine how to apply the caps in § 1981a(b)(3)(A). *Cf. Sattar v. Unocal Corp.*, 829 F.Supp. 331, 333 (N.D.Ca. 1993) ("respondent" in § 1981a(b)(3)(A) means, under 42 U.S.C.A. §§ 2000e(b) and 2000e–5(b), "employer"); *with Curran v. Portland Superintending School Comm.*, 435 F.Supp. 1063, 1073 (D.Me.1977) (larger entity that funds and manages smaller entity is an employer for purposes of Title VII); *Vanguard Justice Society v. Hughes*, 471 F.Supp. 670, 696–97 (D.Md.1979) (same); *Cannon v. State of Delaware*, 523 F.Supp. 341, 343–44 (D.Del.1981) (same); *Rivas v. State Bd. for Community Colleges and Occupational Education et al.*, 517 F.Supp. 467, 470–71 (D.Colo.1981) (same); *Scott v. City of Topeka Police and Fire Civil Serv.*, 739 F.Supp. 1434, 1438 (D.Kan.1990) (same) *and Meadows v. Guptill*, 856 F.Supp. 1362, 1371 (D.Ariz.1993) (The Town itself, and not the Town Council or the Town Manager who employed and supervised the plaintiff, was the "employer" to look to when applying the caps in § 1981a(b)(3)(A)). The number of people that the Township employs is not discussed in Defendants' Motion and it was, to the best of the Court's knowledge and after a review of the transcript, never established in the record. Clearly, the burden of establishing the number of employees is Defendants'. *See, Young–Gerhard v. Sprinkle Masonry, Inc.*, 856 F.Supp. 300, 302 (E.D.Va. 1994). Therefore, the Court must deny Defendants' Motion because they have failed to meet their burden of establishing the number of employees employed by the Township for the purposes of § 1981a(b)(3).

### III. CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' Motion to Reduce the Jury Verdict is DENIED.

---

extent this legislative history mitigates against the Court's conclusion, the Court observes the following: (1) Front pay and its relationship to future pecuniary losses was never discussed in the floor debates; (2) A discussion of front pay and its relationship to future pecuniary losses was not included in the House Report which accompanied the bill (no Senate Report was included); and (3) Senator Kennedy's and Representative Edwards' statements contradict the plain language of the statute which clearly omits the term front pay and clearly limits future pecuniary losses.

2. Presumably, the Township will pay the jury award in this matter. Thus, the policy of § 1981a(b)(3) is effectuated if the Court looks to the size of the Township and not to the size of the Fire Department.