Dr. Iris VARNER, et al., Plaintiffs,

v.

**ILLINOIS STATE UNIVERSITY, et al., Defendants.**

No. 95–1355.

United States District Court, C.D. Illinois.

July 30, 1997.

William R. Kohlhase, Miller Hall & Triggs, Peoria, IL, Rebecca J. Wing, Nicholas P. Iavarone, Laurel G. Bellows, Joel J. Bellows, Bellows & Bellows, Chicago, IL, for Iris I. Varner, Teresa M. Palmer and Paula J. Pomerenke.

Carol J. Hansen Posegate, Gregory K. Harris, Carol Hansen Posegate, Giffin Winning Cohen & Bodewes, Springfield, IL, Renee Smith–Byas, Normal, IL, Mark S. Mester, Latham & Watkins, Chicago, IL, for Illinois State University.

### ORDER

MIHM, Chief Judge.

This matter is now before the Court on Magistrate Judge Robert J. Kauffman's Report & Recommendation and two Motions to Dismiss by Defendants. For the reasons set forth herein, the Report & Recommendation [# 128] is adopted in part and rejected in part, Defendants' Motion to Dismiss [# 71] is granted in part and denied in part, and Defendants' Motion to Dismiss [# 18] is granted in part and denied in part as moot.

### Background

The relevant facts of this case have been sufficiently set forth in the Report & Recommendation of the Magistrate Judge, as well as the prior Orders of this Court, and need not be restated here. Suffice it to say that this matter is brought on behalf of a class including any female teaching faculty at Illinois State University who was an Assistant Professor, Associate Professor, or full Professor anytime during the period beginning with the 1982–1983 academic year up to and including the present. Plaintiffs allege that the class of women has been paid less than their male counterparts, given considerations of teaching experience, the number of classes and class size they taught, academic papers published, service to the University, and other matters to go to the quality of their services. Plaintiffs further allege that Defendants engaged in retaliation against female professors who complained of their alleged employment practices.

On September 24, 1996, the Court ruled on a motion to dismiss filed with respect to the original Complaint ("Motion to Dismiss 1"). Motion to Dismiss 1 was premised upon the argument that Plaintiffs cannot proceed in federal court on any claims based on the Equal Pay Act because the State of Illinois has not consented to suit. Upon the filing of Plaintiffs' First Amended Complaint, Defendants revived this motion to dismiss, as well as a second motion to dismiss that had been filed prior to the case being transferred to this district ("Motion to Dismiss 2"). Motion to Dismiss 2 challenged Plaintiffs' ability to hold Defendants liable in their individual capacities under Title VII and the Equal Pay Act. This matter then was referred to the Magistrate Judge under Local Rule 72.1 for a report and recommendation.

On May 22, 1997, Magistrate Judge Robert J. Kauffman entered a Report & Recommendation which recommended that the motions be granted in part and denied in part. Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the parties had ten (10) working days after service of the Report & Recommendation to file objections to the Magistrate Judge's decision. Objections were timely filed on behalf of both

parties. Additionally, the United States sought and was granted leave to file a brief as *Amicus Curiae* with respect to the issue of sovereign immunity. This Order follows.

**Discussion**

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir. 1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the Complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiffs to relief. *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir. 1993).

I.  *Motion to Dismiss 1—Sovereign Immunity*

A.  *Equal Pay Act Claims*

In their renewed Motion to Dismiss [# 71], Defendants first allege that Plaintiffs' claims under the Equal Pay Act should be dismissed because the State of Illinois has not consented to be sued in federal court under this statute and such a suit is therefore barred by the Eleventh Amendment. Defendants rely on the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* — U.S. —, —, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996), which found:

In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity,"

*Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); and second, whether Congress has acted "pursuant to a valid exercise of power."

*Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123.

When last confronted with this issue in September 1996, the Court engaged in substantial analysis of the effect of *Seminole Tribe* on suits brought pursuant to the Equal Pay Act. Ultimately, the Court determined that the portion of the Fair Labor Standards Act ("FLSA") constituting the Equal Pay Act was enacted to prohibit discrimination in pay based on sex in furtherance of the equal protection clause of the Fourteenth Amendment, which is a valid exercise of Congressional power.[1] After careful consideration of the briefs submitted in connection with this issue, as well as subsequent case authority,[2] the Court remains confident that the prior decision is correct and constitutes the law of the case. To the extent that Defendants seek reconsideration of this Court's prior finding that the Equal Pay Act was properly enacted in furtherance of Congress' power under the Fourteenth Amendment, such a request is denied.

However, Defendants now argue for the first time that Congress did not clearly express its intent to abrogate the Eleventh Amendment in enacting the Equal Pay Act. As this Court's September 24, 1996 Order did not contain an in-depth discussion of this aspect of the *Seminole Tribe* test, the Court will elaborate now in the interest of making a complete record.

The intent to abrogate "must be obvious from 'a clear legislative statement.' " *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123, *quoting Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 2584, 2584, 115 L.Ed.2d 686 (1991). Here, the

1.  *Cf. Crawford v. Indiana Department of Corrections,* 115 F.3d 481, 487 (7th Cir. 1997) (finding that the Americans with Disabilities Act, "like other antidiscrimination statutes," was an exercise of Congressional power under the Fourteenth Amendment, as well as the Commerce Clause).

2.  In *Timmer v. Michigan Department of Commerce,* 104 F.3d 833 (6th Cir.1997), the Sixth

Circuit affirmed the holding of *Marshall v. Owensboro–Daviess County Hospital,* 581 F.2d 116 (6th Cir.1978), cited in this Court's September 24, 1996 Order. In so doing, the Sixth Circuit found that, although not expressly stated, Congress clearly and properly acted in furtherance of § 5 of the Fourteenth Amendment in extending the Equal Pay Act to state employees. *Timmer,* 104 F.3d at 838–39.

Equal Pay Act itself contains neither definitions nor enforcement provisions. Rather, such interpretative terms and mechanisms must be drawn from the context of the remainder of the FLSA.

> The term "employer: is defined in the FLSA to include[ ] a public agency," which in turn is defined as "the government of a State or political subdivision thereof" and any agency of a State. 29 U.S.C. § 203(d), (x). The term "employee" is defined to include "any individual employed by a State, political subdivision of a State, or an interstate governmental agency." *Id.* § 203(e)(2)(C). Finally, the private enforcement provision provides that "[a]n action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

*Timmer,* 104 F.3d at 837–38. Such language makes it abundantly clear that Congress intended to permit actions against states and state agencies under the Equal Pay Act, thereby purposely abrogating sovereign immunity from suit.

Thus, the Court concurs with the other courts which have confronted this question with respect to the FLSA and reached the conclusion that the FLSA's current definitional and enforcement provisions, which are fully applicable to the Equal Pay Act, as well as the accompanying legislative history, provide an unmistakably clear statement of Congress' intent to abrogate the states' sovereign immunity.[3] Accordingly, the Court finds that Congress clearly intended to abrogate the States' sovereign immunity from suit through the Equal Pay Act, and the portion of Defendants' Motion to Dismiss which requests dismissal of all claims based on the Equal Pay Act must be denied.

## B. *Claims for Monetary Damages*

In their Objections to the Report & Recommendation, Defendants also raise the new argument that Plaintiffs' claims for monetary damages under § 1981 a are barred by the Eleventh Amendment. Defendants contend that § 1981 a contains no indication of any intent to abrogate sovereign immunity with respect to claims for compensatory and punitive damages, failing to satisfy the *Seminole Tribe* standard for abrogation of Eleventh Amendment immunity.

■ With respect to Plaintiffs' claims for punitive damages, the Court agrees with Defendants' position. Under § 1981a, governments, governmental agencies or political subdivisions are expressly excluded from liability for punitive damages. 42 U.S.C. § 1981a(b)(1). This interpretation is further supported by the relevant legislative history, which reveals that the purpose of the language in § 1981 a was to establish that punitive damages are not available against state and local government defendants. *See* 137 Cong. Rec. S15445–02, S15460, S15472–01, S15484, H9505–01, H9527 (1991). Thus, the Court finds that Congress made no unequivocal expression of intent to abrogate the states' sovereign immunity with respect to punitive damages in enacting § 1981a, and the standard set forth in *Seminole Tribe* for a valid abrogation of sovereign immunity has not been satisfied. Accordingly, the portion of Plaintiffs' claims in Counts III and IV of the First Amended Complaint seeking punitive damages pursuant to § 1981 a are barred, and Defendants' Motion to Dismiss will be granted in this respect.

Defendants also urge the Court to adopt their myopic view with respect to Plaintiffs' claim for compensatory damages and find no indication of Congressional intent in § 1981 a itself. However, in considering the availabili-

---

**3.** *See also Brinkman v. Department of Corrections,* 21 F.3d 370, 372 (10th Cir.), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *Reich v. New York,* 3 F.3d 581, 590–91 (2nd Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); *Hale v. Arizona,* 993 F.2d 1387, 1391–92 (9th Cir.) (en banc), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993). Furthermore, the Court notes that the FLSA definition of "employer" and enforcement provisions at issue are substantially similar to those set forth in the Age Discrimination in Employment Act, in which context the Seventh Circuit held such provisions to evidence Congress' clear "desire to override the states' sovereign immunity." *Davidson v. Board of Governors of State Colleges & Universities,* 920 F.2d 441, 443 (7th Cir.1990).

ty of compensatory damages, the Court finds that the appropriate analysis must reach further. It is clear that Title VII permits recovery of front pay, back pay, and other equitable relief against employers who violate its provisions but does not, as enacted, provide an avenue of relief with respect to monetary damages. *See* 42 U.S.C. § 2000e *et seq.* However, in 1991, Congress passed § 1981a to expand the remedies available to successful Title VII plaintiffs to include compensatory damages. *Blankenship v. Warren County, Virginia,* 931 F.Supp. 447, 450 (W.D.Va.1996), *citing* H.R.Rep. No. 40(1), 102d Cong., 1st Sess. 65, 71 (1991), 1991 U.S.C.C.A.N. 549. While § 1981a does not technically amend Title VII but, rather, stands alone as a separate statutory provision, this is not dispositive. To the contrary, the Court concurs with the district court in *Blankenship* that an examination of § 1981 a necessarily involves reference to the definitional and enforcement provisions of Title VII.

Section 1981a provides:

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 . . . against a respondent who engaged in unlawful intentional discrimination . . . prohibited under section 703, 704, or 717 of the Act . . ., and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in additional to any relief authorized by section 706(g) of the Civil Rights Act of 1964 . . . from the respondent.

42 U.S.C. § 1981a(a)(1). Although a complaining party includes "a person who may bring an action or proceeding under Title VII of the Civil Rights Act of 1964," 42 U.S.C. § 1981a(d)(1)(A), the term "respondent" is not defined by § 1981a. However, by its own terms, § 1981a looks to § 2000e to give meaning to its provisions. *Sattar v. Unocal Corp.,* 829 F.Supp. 331, 333 n. 3 (N.D.Cal. 1993).

To determine who qualifies as a respondent, one has no recourse but to look to § 2000e–5(b), which defines "respondent"

as, inter alia, an "employer." . . . [i]t is beyond cavil that employers under Title VII include state employers. Therefore, § 1981a, which permits suits against respondents, allows suits against state employers as well.

*Blankenship,* 931 F.Supp. at 450. In other words, the term "[r]espondent' can only be interpreted by reference to § 2000e and, thus, to the use of the word 'employer'." *Sattar,* 829 F.Supp. at 333 n. 3.

■ Thus, the Court finds that by including the references to Title VII in the text of § 1981a and failing to provide an alternative definition, Congress expressed its intent that Title VII supply the definition of "respondent" for purposes of assessing liability under § 1981a. This, in combination with the other overt references to Title VII's enforcement and definitional provisions in the text of § 1981a, evidences Congress' intent in enacting § 1981a to supplement the remedies available under Title VII and expand its prior abrogation of the states' sovereign immunity. Furthermore, the legislative history of § 1981a evidences Congress' understanding that the provisions concerning compensatory damages would apply to the states. *See* 137 Cong. Rec. H9505–01, H9527 (1991) ("By reference to sections 703, 704 and 706 of Title VII, the statutory language of section [1981a] is explicit that compensatory damages are available against state and local governmental defendants. . . . "); 137 Cong. Rec. S15472–01, S15484 (1991) ("[C]ompensatory damages may be awarded against federal, state and local government agencies. . . ."). Accordingly, in applying the first step of the two-part analysis set forth in *Seminole Tribe,* the Court concludes that Congress has provided a clear statement of its intent to subject states to claims for compensatory damages pursuant to § 1981 a in federal court.

■ The second part of the *Seminole Tribe* analysis requires that Congress act "pursuant to a valid exercise of power" in attempting to abrogate sovereign immunity. —— U.S. at ——, 116 S.Ct. at 1123. In enacting § 1981a, Congress sought to expand the remedies available to plaintiffs in Title VII actions. The Supreme Court has held that Title VII constitutes a valid abrogation

of the states' Eleventh Amendment immunity because Congress acted in furtherance of the Fourteenth Amendment, "which operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1128; *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Like Title VII, § 1981a provides additional remedies against discrimination in the workplace on account of sex, and Defendants cannot reasonably argue that Congress lacks power to provide remedies for discrimination under § 5 of the Fourteenth Amendment. As such, the Court finds that § 1981a is an anti-discrimination measure that may be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantee of equal protection of the law. Therefore, under *Seminole Tribe,* sovereign immunity would not insulate the State of Illinois from suit for compensatory damages pursuant to § 1981a, and Defendants' Motion to Dismiss 1 must be denied with respect to Plaintiffs' claims for compensatory damages in Counts III and IV.

## II. *Motion to Dismiss 2—Individual Liability*

### A. *Equal Pay Act Claims*

Defendants assert that the Equal Pay Act does not permit suits against defendants in their individual capacities. Although the Seventh Circuit has found that an individual employee may be named in lieu of the employer in an Equal Pay Act claim, *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987), the Court of Appeals did not decide the precise issue of whether an individual employee may be named in addition to the employing entity in this context. However, this issue has been addressed by other district courts in this circuit. In *Pommier v. James L. Edelstein Enterprises,* the Honor-

able Marvin E. Aspen held that the definition of the term "employer" as used in both the Equal Pay Act and Title VII is "identical," and case law in the Title VII area directs that an individual supervisor cannot be held personally liable for Equal Pay Act violations made as agent of the employer. 816 F.Supp. 476, 481 (N.D.Ill.1993), *citing Weiss v. Coca-Cola Bottling Co. of Chicago,* 772 F.Supp. 407, 412 (N.D.Ill.1991). The district judge in *Weiss* likewise concluded that allegations against an individual regarding actions that were taken as an agent of the employer cannot result in individual liability. 772 F.Supp. at 412. *See also Jaskowski v. Rodman & Renshaw, Inc.,* 842 F.Supp. 1094, 1098 (N.D.Ill.1994) (recognizing that neither Title VII nor the Equal Pay Act permits suits against individuals.) [4]

Whereas the Equal Pay Act derives its definition of "employer" from the Fair Labor Standards Act and "includes *any person acting directly or indirectly in the interest of an employer* in relation to an employee and includes a public agency," 29 U.S.C. § 203(d) (emphasis added), "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and *any agent of such a person*" is an employer under Title VII. 42 U.S.C. § 2000e(b) (emphasis added). Although this Court does not agree that the definitions of "employer" in Title VII and the Equal Pay Act are identical, the definitions may be functionally equivalent as applied. Furthermore, the remedies available under the applicable sections of the Equal Pay Act include unpaid minimum wages or unpaid overtime compensation, liquidated damages, reinstatement, and promotion. 29 U.S.C. § 216(b). Like the remedies available under Title VII, these are remedies which are more likely provided by

4. The Court also notes that although the decisions in *Witham v. Regency Savings Bank,* 1995 WL 723888 (N.D.Ill. December 5, 1995), and *Equal Employment Opportunity Commission v. Home by Hemphill, Inc.,* 1995 WL 683502 (N.D.Ill. November 16, 1995), technically allow allegations of individual liability under the Equal Pay Act to survive a motion to dismiss, the Court finds these opinions unpersuasive. In *Witham,*

the Honorable Milton I. Shadur expressly stated that the court would be willing to entertain a motion for dismissal of the individual claim that was "properly supported by persuasive authority." 1995 WL 723888 at *1. Similarly, although leave to replead was granted, the decision in *Hemphill* actually dismissed the claim of individual liability as insufficient. 1995 WL 683502 at *3.

an employer rather than an individual, and the language of the Equal Pay Act uses the term "employer" in the context of the entity paying the disparate wages. 29 U.S.C. §§ 216(b), 206(d)(1).

Additionally, the Court's review of the First Amended Complaint reveals that Plaintiffs' allegations against the named Defendants are directed toward actions purportedly taken by these persons in their capacities as agents for Illinois State University. Plaintiffs do not allege that any of these persons was acting outside the scope of their official capacities at the time they engaged in violations of the Equal Pay Act. Thus, there does not appear to be a basis for imposing personal liability against these individuals. Accordingly, this aspect of the Report & Recommendation is rejected, and Plaintiffs' claims against Defendants in their individual capacities are dismissed from Counts I and II.

### B. *Title VII Claims*

In the Motion to Dismiss 2, Defendants also contend that they cannot be sued in their individual capacities for violations of Title VII and ask that Plaintiffs' claims in this regard be dismissed. In the Report & Recommendation, the Magistrate Judge concurs and recommends that Defendants' Motion to Dismiss the Title VII claims against the individuals in Counts III and IV be granted. However, this Court's review of the Amended Complaint reveals that Counts III and IV, as amended, do not state any claim against Defendants in their individual capacities. Accordingly, the Court rejects this portion of the Report & Recommendation. This aspect of Motion to Dismiss 2 will be denied as moot.

### Conclusion

For the reasons set forth herein, the Report & Recommendation is ADOPTED in part and REJECTED in part. Defendants' Motion to Dismiss [# 71] is GRANTED IN PART and DENIED IN PART, and Defendants' Motion to Dismiss [# 18] is GRANTED IN PART and DENIED IN PART AS MOOT. The previously imposed stay is now lifted, and this matter is referred to Magistrate Judge Kauffman for further proceedings.