KAREN R. SCHAFFERT, APPELLANT, V. LANCASTER COUNTY SCHOOL DISTRICT NO. 0001, ALSO KNOWN AS LINCOLN PUBLIC SCHOOLS, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

581 N.W. 2d 444

Filed June 23, 1998.    No. A-97-191.

Scott J. Norby and Chad M. Meisgeier, of McGuire and Norby, for appellant.

Edwin C. Perry, James B. Gessford, and Gregory H. Perry, of Perry, Guthery, Haase & Gessford, P.C., for appellee.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Plaintiff-in-error, Karen R. Schaffert, appeals from the judgment of the district court affirming the decision of the defendant-in-error, Lancaster County School District No. 0001 (the District), to terminate her teaching contract for incompetency after the Lancaster County School Board (the Board) rejected the hearing officer's recommendation that just cause did not exist for termination of her contract.

## BACKGROUND

Schaffert graduated from the University of Nebraska in 1967 with a bachelor of science degree in education. She received a master's degree in special education in 1988 from the University of Nebraska at Lincoln. She began working for Lincoln Public Schools as a teacher's aide at Riley School in 1979. In 1985-86, Schaffert became employed as a half-time teacher and a half-time aide. In 1986-87, she became a full-time teacher at Saratoga School, where she remained until her contract was terminated. She received tenure in 1989-90. During

various years, she taught classes for behaviorally impaired students, first grade, and second grade.

Since 1986-87, Schaffert's teaching skills have been analyzed by formative and summative appraisals. A formative appraisal was conducted every year that a summative appraisal was not conducted. In a formative appraisal, a teacher sets goals, establishes a plan to accomplish those goals, and then establishes a time line for achieving the goals. A summative appraisal is a more in-depth process, which occurs every third year for a tenured teacher. After the summative appraisal observations by a member of the administration, a written appraisal is prepared which "grades" a teacher in 16 areas, which include essential teaching skills necessary to provide effective teaching. Every teacher is expected to receive a grade of 3 in each of the 16 areas, which shows that the teacher is meeting the District's expectations.

Prior to 1994-95, Schaffert had received a 3 in all of her evaluations, indicating that she had met the District's expectations. These prior appraisals also contained many positive comments concerning Schaffert's teaching ability. However, in 1994-95, Schaffert's summative appraisal report showed a grade of 2 in four areas, showing that she needed improvement in these areas. Thus, she was again placed on summative appraisal for the 1995-96 school year. After two observations conducted by administrators, Schaffert was given a "Notice of District Performance Expectation Deficiency" on February 9, 1996. Such a notice formally notifies a teacher that the administrators have performance expectations that are not being met and are not being improved upon. In cooperation with the administration, Schaffert then developed an improvement plan for improving her teaching skills. This plan was implemented for 9 working days before Schaffert was placed on "intensive assistance" on February 26. This signifies a process whereby the teacher receives assistance from a team of fellow teachers and administrators to help improve his or her teaching skills. Further evaluations in April still showed deficiencies in some areas.

By letter dated April 12, 1996, the Board sent Schaffert notice that it was considering terminating her teaching contract for the 1995-96 contract year due to "incompetency, neglect of

duty, unprofessional conduct, insubordination, and other conduct which interferes substantially with the continued performance of [her] duties." Schaffert made written demand for a hearing on April 16, 1996. See Neb. Rev. Stat. § 79-831 (Reissue 1996). The Board elected to hold the hearing before a hearing officer pursuant to Neb. Rev. Stat. § 79-12,121.01 (Reissue 1994) (now codified at Neb. Rev. Stat. § 79-840 (Reissue 1996)). The hearing was held on June 10 and 11. Nancy Biggs, assistant superintendent for human resources for Lincoln Public Schools; Paul Canny, assistant principal at Saratoga; Connie Niedt, principal at Saratoga; and Coni Schwartz, principal at Riley, testified for the District. Testifying for Schaffert were: Carol Muthersbaugh, the mother of one of Schaffert's students; Todd Peters, the father of one of Schaffert's students; Don McPherson, a physical education teacher at Saratoga; Kathy Phillips, a behavior disorders teacher at Saratoga; Pam Reinhardt, a third grade teacher at Saratoga; and Schaffert herself. In addition, 44 exhibits were received into evidence. Further details regarding the evidence received at the hearing will be discussed below.

On July 9, 1996, the hearing officer distributed his "Recommended Findings of Fact and Conclusions of Law." The hearing officer found that no evidence was presented that would support termination based upon neglect of duty, unprofessional conduct, insubordination, or other conduct which substantially interfered with the continued performance of her duties. This left, as the only remaining ground for termination, the charge of incompetency. The hearing officer recommended that based on the evidence presented at the hearing, "Ms. Schaffert is not incompetent as a teacher, and just cause does not exist to terminate her teaching contract." In support of this conclusion, he described the above-mentioned appraisal process, noted that all of Schaffert's evaluations prior to 1994-95 had been very favorable to her teaching skills and methods, and ascertained that the only things that had changed in the past 2 years were the expectations of those conducting the appraisals, i.e., the administration, and the makeup of students in Schaffert's class, i.e., the concentration of students with special needs. Thus, he concluded that while the evidence shows "there are legitimate con-

cerns regarding Ms. Schaffert's teaching over the past two years and that she may have to adopt some teaching methods to meet the needs of today's students, the relevant statutes do not require perfection and provide for termination only if she is incompetent as a teacher." He determined that he "cannot conclude that the evidence taken as a whole supports a finding that Ms. Schaffert is incompetent as a teacher" and therefore recommended that her contract not be terminated.

The Board considered the recommended findings of fact and conclusions of law and rendered a decision on July 23, 1996, to terminate Schaffert's contract. The Board found that if a certified teacher does not receive a grade of 3 in all 16 areas of his or her appraisal, remedial action is taken and, if that is not successful, his or her employment is terminated, because a teacher who does not meet the District's standards in all 16 expectation areas demonstrates a deficiency or shortcoming of teaching skills. The Board found that all of the qualified educational experts testified that Schaffert's teaching skills did not meet the District's standards expected of and received from other certified teachers at Saratoga and within the Lincoln public school system. Thus, it found that during 1995-96, Schaffert's teaching did not meet the standards expected as demonstrated by the fact that she failed to meet 8 of the 16 expectations, which included demonstrating effective planning skills, effectively implementing lesson plans, effectively using appropriate motivational strategies with students, effectively communicating with students, identifying and providing opportunities for students' individual differences, providing appropriate standards for students' classroom behavior, organizing students for effective instruction, and promoting a positive self- concept for all students. The Board further found that Schaffert's performance exhibited specific, identified deficiencies and shortcomings in teaching skills constituting incompetency and that this had resulted in an overall level of performance below that required of and exhibited by other certified teachers. It found the foregoing constituted just cause for termination.

The Board concluded that the District had extended reasonable and appropriate efforts to assist Schaffert in overcoming her deficiencies and that further remedial efforts were not warranted

and would not alleviate the demonstrated deficiencies in her teaching skills. It determined that the hearing officer's conclusions that there were legitimate concerns regarding Schaffert's teaching were correct. However, the Board determined that his conclusion that these deficiencies may be remedied was not correct and that he failed to recognize the extent of the deficiencies and the prior unsuccessful efforts to address these deficiencies.

On September 17, 1996, Schaffert filed her "Amended Petition-in-Error" in the district court for Lancaster County, alleging that (1) the Board had exceeded its statutory authority; (2) its decision was not supported by competent, material, and substantial evidence; (3) its decision was arbitrary; and (4) its decision was made upon unlawful procedures. Specifically, she alleged that the Board terminated her contract and rejected the hearing officer's findings of fact and recommendation without giving weight to them as required by Neb. Rev. Stat. § 79-12,121.03 (Reissue 1994) (now codified at Neb. Rev. Stat. § 79-842 (Reissue 1996)) and substituted its judgment for credibility decisions made by the hearing officer as reflected by the terms of his recommended findings of fact and conclusions of law, rejecting such findings and conclusions. Further, she alleged the Board terminated her contract without competent, material, and substantial evidence to establish just cause and acted in an arbitrary and capricious manner in rejecting the hearing officer's findings of fact and conclusions of law. The District filed an answer denying all of her allegations and asserting that it acted in full compliance with the law.

Trial was held on October 8, 1996. Schaffert submitted the transcript of the hearing held by the hearing officer on July 10 and 11, as well as the transcript of the July 23 hearing before the Board. The district court held that the Board had given weight to the hearing officer's findings of fact, concluded that the Board had sufficient relevant evidence to terminate Schaffert's contract, and thus affirmed the Board's decision. Schaffert timely appeals.

## ASSIGNMENTS OF ERROR

Schaffert argues that the district court erred in finding (1) that the Board gave appropriate weight to the hearing officer's

recommended findings of fact and conclusions of law under § 79-842 and (2) that the Board met its burden of proof establishing just cause existed to terminate her contract.

## STANDARD OF REVIEW

■ The standard of review in a proceeding in error from an order of a school board terminating the contract of a tenured teacher is whether the school board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. *Boss v. Fillmore Cty. Sch. Dist. No. 19,* 251 Neb. 669, 559 N.W.2d 448 (1997). The evidence is sufficient as a matter of law if the school board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Id.*

■ Statutory interpretation presents questions of law, and an appellate court is obligated to reach a conclusion independent of that reached by the trial court. *In re Estate of Peterson,* 254 Neb. 334, 576 N.W.2d 767 (1998).

## DISCUSSION

*School Board's Standard of Review.*

Schaffert alleges that a standard of review has never been articulated for a school board when it reviews the recommended findings of fact and conclusions of law submitted by the hearing officer. She argues that such a standard of review is necessary and urges us to define for the school board a standard similar to that of an appellate court reviewing a factual determination of a trial court in a bench trial. She cites several cases for that familiar rule, which in essence states that the trial court's factual findings will not be set aside on appeal unless they are clearly wrong. See, e.g., *Hilliard v. Robertson,* 253 Neb. 232, 570 N.W.2d 180 (1997).

■ The District argues that a school board continues to be responsible for decisions regarding termination of a teaching contract, even in those instances when the board elects to use the services of a hearing officer for the termination hearing. The District asserts that the relevant statutes set forth a sufficient standard of review for a school board in considering the recommendations of a hearing officer and that Schaffert's proposed standard of review is inappropriate. After reviewing the entire

statutory scheme involved in teaching-contract termination proceedings, we agree.

As brief procedural background, Neb. Rev. Stat. § 79-12,112 (Reissue 1994), now codified at Neb. Rev. Stat. § 79-829 (Reissue 1996), provides in pertinent part that a contract of a tenured teacher will be deemed continuing and shall remain in full force and effect unless terminated by a majority vote of the school board. A teacher must be notified in writing by April 15 of the intent to terminate, after which the teacher can request a hearing on the issue. See § 79-831. Under § 79-840, a school board of a Class IV or V school district may require that termination hearings be conducted by a hearing officer and Neb. Rev. Stat. § 79-12,121.02 (Reissue 1994), now codified at Neb. Rev. Stat. § 79-841 (Reissue 1996), addresses the selection procedure and requires that the hearing officer "be an attorney . . . knowledgeable in the rules of civil procedure and evidence applicable to the district courts."

The focus of this appeal is on § 79-842, which provides in part:

> The hearing officer . . . shall conduct the hearing . . . hear and receive evidence, and make recommended findings of fact and conclusions of law. . . . Within thirty days following the hearing, the hearing officer shall transmit to the school board the original or a certified copy of the record of the hearing which shall include the transcribed testimony from the hearing and the recommended findings of fact and conclusions of law. The certified record filed by the hearing officer shall be the record upon which the school board shall make its decision, and no additional evidence shall be heard by the school board. The school board shall give each party an opportunity for oral argument and briefing prior to making its decision. If a hearing is requested, no one shall contact or be contacted by the school board or individual school board members regarding the subject matter of the hearing in order to obtain or provide information to be considered in making the decision or in an attempt to persuade the school board regarding the decision to be made, except that the school

board may receive advice and counsel from an attorney hired to represent the school board in making the decision. *In making its decision, the school board shall give weight to the findings of fact of the hearing officer but shall not be bound by them.* The school board shall make its decision within twenty days after receipt of the record from the hearing officer.

(Emphasis supplied.)

Statutory interpretation presents questions of law, and an appellate court is obligated to reach a conclusion independent of that reached by the trial court. *In re Estate of Peterson*, 254 Neb. 334, 576 N.W.2d 767 (1998). In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.*

Schaffert contends that this court should establish a standard by which a school board and those judicial tribunals reviewing the board's decision are to review the hearing officer's findings of fact. There is a fundamental flaw in her argument. Neither a school board nor a judicial tribunal reviews a decision of the hearing officer under the statutory procedure in issue. The plain and ordinary language found in §§ 79-841 and 79-842 is that the board is the decisionmaker, not the hearing officer. Section 79-841 requires the hearing officer to be an attorney knowledgeable in the rules of civil procedure and evidence, who conducts the hearing, receives the evidence, and transmits the record of the hearing and recommended findings of fact and conclusions of law to the school board. As argued by the District, the ordinary meaning of the term "recommend" is "to present as worthy of acceptance or trial . . . to advise." Webster's Tenth Collegiate Dictionary 976 (1995). It would appear in context that the hearing officer's primary function is to act in creating a record for the board upon which it makes its decision.

Moreover, § 79-842 refers time and time again to a decision made by the school board. The language of §§ 79-841 and 79-842 could hardly be clearer that the decision of whether to terminate a contract or not lies with the board and that author-

ity and responsibility, under this statute, never shifts to the hearing officer. It begins, and remains, with the board regardless of its election to use a hearing officer.

And if this is not apparent enough, the Legislature went a step further. A school board, in making its decision to terminate a contract, "*shall* give weight to the findings of fact of the hearing officer but *shall* not be bound by them." (Emphasis supplied.) § 79-842. As a general rule, in construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997). And so it is mandatory that a school board not be bound by the hearing officer's findings of fact. This seems to make it indelibly clear that the board must act independently and cannot abrogate its duty to evaluate the evidence and reach a decision. The board does not review the hearing officer's recommendations in the appellate sense, and for us to approach the board's task as doing so would be contrary to the statutes involved.

With regard to the standard required to guide courts in appeals from a school board's decision, a petition in error is the appropriate procedure and the applicable standard of review is already well delineated. See, Neb. Rev. Stat. § 25-1901 (Reissue 1995); *Cox v. York Cty. Sch. Dist. No. 083*, 252 Neb. 12, 560 N.W.2d 138 (1997). The standard of review in a proceeding in error from an order of a school board terminating the contract of a tenured teacher is whether the school board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. *Boss v. Fillmore Cty. Sch. Dist. No. 19,* 251 Neb. 669, 559 N.W.2d 448 (1997).

However, in construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Loup City Pub. Sch., supra.* Thus, we agree with Schaffert that the language requiring the Board to "give weight" to the hearing officer's recommendations is mandatory also and cannot be "read out" of § 79-842. The question Schaffert presents is how to reconcile and apply the requirement that the Board give weight to the rec-

ommendations with the mandate that the Board not be bound by the recommendations. But before taking that path, we first take a close look at just what it is the statute requires that weight be given to.

■ Section 79-842 specifies that the hearing officer recommends (1) findings of fact and (2) conclusions of law. The statute does not speak to the hearing officer's making recommendations on the ultimate issue, i.e., termination versus nontermination. Then the statute goes on to require that the board "give weight" to the hearing officer's "findings of fact." The board is given no similar mandate regarding the hearing officer's "conclusions of law." In sum, the plain and ordinary meaning of § 79-842 is that a school board must give weight to a termination hearing officer's findings of fact, but need not give weight to his or her legal conclusions or to the hearing officer's general recommendations, should he or she choose to provide such.

■ With this statute now in clearer focus, we recall those aspects of the hearing officer's recommendations which were rejected here and observe that much of that rejected was not findings of fact at all, regardless of the hearing officer's labels to the contrary. First, there is the recommendation that Schaffert's contract not be terminated. This, of course, is nothing more than an apparently gratuitous, general recommendation of the hearing officer. As stated, § 79-842 does not specifically address this type of recommendation. And even if silence on the matter licenses their permission, the statute certainly grants such recommendations no deference. This seems consistent with the notion that such a matter lies squarely at the core of the Board's nondelegable task to independently decide the ultimate issue—to terminate or not to terminate. Next, there are those recommendations which were, in reality, conclusions of law and not findings of fact; for example, the recommendation that "just cause does not exist to terminate [Schaffert's] teaching contract." See, Neb. Rev. Stat. § 79-12,107 (Reissue 1994), now codified at Neb. Rev. Stat. § 79-824(4) (Reissue 1996), and § 79-829. We recognize the potential difficulty in distinguishing between findings of fact and conclusions of law when dealing with statutory and contractual grounds for terminating the con-

tract of a teacher or an administrator. See, *Clarke v. Board of Education*, 215 Neb. 250, 338 N.W.2d 272 (1983); *Schulz v. Board of Education*, 210 Neb. 513, 315 N.W.2d 633 (1982); *Boss v. Fillmore Cty. Sch. Dist. No. 19, supra, aff'd* 251 Neb. 669, 559 N.W.2d 448 (1997). Nonetheless, we believe the question of whether the facts, as found, constitute "just cause" to terminate a teacher's contract is principally a question of law. As stated, the statute imposes no requirement on the school board to give weight to the hearing officer's legal conclusions.

Although we have concluded that much of that rejected by the Board did not constitute findings of fact, clearly, the hearing officer found that Schaffert was not incompetent as charged. There is no doubt that this was a pivotal factual finding which was rejected. And so we return to Schaffert's request that we somehow define or quantify the weight the Board is to give the hearing officer's findings of fact under § 79-842. We conclude that while it may be necessary to take on such a daunting task in some future setting, it is not necessary here. *Motor Club Ins. Assn. v. Fillman*, 5 Neb. App. 931, 568 N.W.2d 259 (1997) (appellate court not obligated to engage in analysis which is not needed to decide case before it). However, a close inspection of the comments of various Board members quickly exposes the lack of merit in the contention that the Board gave insufficient weight to such recommendation. Some examples follow.

One of the Board members commented: "It's a real hard case, and I could see where the hearing officer would have trouble, but I think, as an educator, I think educators have lots of bags of tricks . . . ." Another stated:

> I ended up reading all the testimony before I read the hearing officer's decision. In reading through the packet, I was really kind of ready to say, no, we'll have to go through with the termination.
>
> . . . .
>
> When I read the hearing officer's report and determination, I had a hard time seeing what he was — where he was coming from.

A third member stated:

> I think those were a couple of points that I didn't understand how the hearing officer, given the experienced

administrators who independently observed the observation, didn't seem to give any weight to that. And I would give more weight to that, because I was impressed with their background and the fact that they have been in several different schools with similar demographics.

In addition, the motion adopted by the Board details its reasoning and where it found agreement and disagreement with the hearing officer. In the end, the Board found the professional opinions of the administrators on Schaffert's competency more compelling than that of the hearing officer. We fail to see how such action demonstrates even a threshold showing that the Board failed to accord the hearing officer's recommended findings of fact the weight they are due under § 79-842.

*Sufficiency of Evidence.*

There is no question that the Board acted within its jurisdiction under § 79-829, which allows the contract of a permanent, certificated employee to be terminated for certain prescribed reasons, including just cause. We must now determine if there was competent evidence to support the Board's findings of just cause. The evidence is sufficient as a matter of law if a school board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Boss v. Fillmore Cty. Sch. Dist. No. 19*, 251 Neb. 669, 559 N.W.2d 448 (1997). Teacher incompetency or neglect of duty is not measured in a vacuum or against a standard of perfection, but, instead, must be measured against the standard required of others performing the same or similar functions. *Id.*

The Board determined that Schaffert's teaching skills did not meet the standards expected of and received from other certified teachers in the District. Specifically, the Board found that in 1995-96, she had failed to demonstrate effective planning skills, to effectively implement lesson plans, to use appropriate motivational strategies, to effectively communicate with students, to identify and provide opportunities for individual differences, to provide appropriate standards for classroom behavior, to organize students for effective instruction, and to promote a positive self-concept for all students. Based on the evidence before it, the Board determined that Schaffert was incompetent and terminated her teaching contract.

As stated, § 79-829 allows the contract of a tenured teacher to be terminated for just cause, a concept defined in § 79-824 to include incompetency. Incompetency is defined to include, but not limited to, demonstrated deficiencies or shortcomings in knowledge of subject matter or teaching or administrative skills. See § 79-824. Schaffert argues that there was insufficient evidence to support a finding of incompetency. We disagree.

Four separate summative appraisals were conducted by three separate administrators during the 2 years prior to termination of Schaffert's contract. All four appraisals showed that Schaffert did not promote appropriate standards for classroom behavior and did not organize students for effective instruction. Three of the four appraisals show deficiencies in planning skills, implementing lesson plans, identifying and providing opportunities for individual differences, and promoting a positive self-concept for all students. Motivational strategies and effective communication were also deficient in some of the appraisals.

In addition, all three professional administrators testified about the specific instances of classroom behavior they observed which led them to these conclusions. These included examples of off-task behavior, lack of planning and preparation for learning activities, lack of coherent structure in how the lessons fit together, and not teaching to the children's level of understanding. Each of them testified that Schaffert's teaching skills were not within the standards expected by the District and received from other teachers. There is sufficient evidence of deficiencies in Schaffert's teaching skills.

Schaffert tries to justify these deficiencies by arguing that all of her evaluations from prior years had been good to excellent and that her teaching skills had not changed. She claims her deficient evaluations in 1994-95 and 1995-96 were the result of the expectations of a new administration and the disruptive nature of the students in her classroom during these years. However, the record shows that all of the other teachers evaluated by the new administration during this time period met the District's expectations, except one other who received one 2 on her summative appraisal. It also shows that Schaffert's classes generally comprised 6 to 12 students, which is significantly

smaller than other first and second grade classes in the District and that the classes did not contain an abnormally high percentage of children with behavioral disorders. Pam Reinhardt, a teacher at Saratoga who had four of the same children in third grade that Schaffert had previously taught, testified that teaching these children had been the most difficult, challenging year she had encountered. However, while teaching these children, she received all 3's on her summative appraisal, with several outstanding marks showing she exceeded the District's expectations. In addition, Canny testified that Schaffert had an endorsement in behavior disorders and, thus, should have had the skills, training, and experience to deal with the children in her classroom, even if they had behavior disorders.

The record contains sufficient evidence as a matter of law for the Board to find that Schaffert was incompetent and that such constituted just cause to terminate her contract with the District.

## CONCLUSION

The Board properly reviewed and considered the hearing officer's findings under § 79-842. It was not bound by those recommendations. The evidence was sufficient as a matter of law to support a finding of incompetence and thus of just cause to terminate Schaffert's contract. Thus, the decision of the district court which affirmed the Board's action is affirmed.

AFFIRMED.