# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 97-3132

Deborah Kramer,        *

       *

       Appellee,       *

       *      Appeal from the United

       v.         *      States District Court

       *      for the District of Nebraska

Logan County School District No.    *

R-1, a/k/a Stapleton Public Schools,   *

       *

       Appellant.      *

Submitted:    February 9, 1998
Filed:    October 14, 1998

Before RICHARD S. ARNOLD, [1] Chief Judge, HANSEN, Circuit Judge, and LIMBAUGH,[2] District Judge.

---

[1] The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

[2] The Hon. Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

LIMBAUGH, District Judge

Logan County School District No. R-1, a/k/a Stapleton Public Schools ("the school district") appeals following a jury verdict entered in favor of one of its former employees, Deborah Kramer, on her discriminatory discharge claim arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. For the reasons set forth below, we affirm the judgment of the district court.[3]

I

Deborah Kramer began working for the school district as a substitute teacher during the 1987-88 school year. She was certified in mathematics and chemistry. While working for the school district, Kramer obtained further certification in middle school mathematics, middle school all subjects, general science and natural science.

During the 1990-91 school year, the school district's high school science teacher was placed on administrative leave and, ultimately, resigned. Kramer was named as his replacement and awarded a full-time teacher's contract. She was subsequently awarded annual full-time teacher's contracts for the 1991-92 and 1992-93 school years. At all times, Kramer remained a probationary teacher as defined by Nebraska law.

In February, 1993, the school district's high school principal, Mike Apple, and superintendent, John Broadbent, decided that they would recommend that Kramer's teaching contract not be renewed for the following school year. The school board approved the recommendation of non-renewal and, on March 18, 1993, sent Kramer a notice letter to that effect.[4] Kramer requested and was granted the right to an

---

[3] The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

[4] Under Nebraska law, only a school board may act to non-renew the

(continued...)

informal hearing before the school board to allow her the opportunity to discuss and explain her position with regard to continued employment, to present information and to ask questions of those appearing on behalf of the school district. See Neb. Rev. Stat. §§ 79-828(5) and (8).

The hearing was held on April 28, 1993. Kramer was represented by counsel, called several witnesses and cross-examined the witnesses against her. Although she challenged the recommendation regarding the non-renewal of her teaching contract, Kramer did not present any allegations or evidence of gender discrimination. In all, the hearing lasted nearly five hours.

After approximately one hour of deliberations, the school board unanimously adopted a resolution stating that Kramer's employment contract would not be renewed because she could not get along with the administration, received below average evaluations, failed to function as a team player in the everyday working environment of the school district, and that the school district would be better served by seeking a more cooperative teacher.

Kramer elected not to challenge the school board's decision in state court. She did, however, file a charge of discrimination with the Nebraska Equal Opportunity

[4](...continued)
contract of a probationary teacher. See Neb. Rev. Stat. § 79-828; Nuzum v. Board of Education of the School District of Arnold, 417 N.W.2d 779, 782 (1988) (Nebraska statutes "repose[] in the board, not in a superintendent, the power to contract with teachers and administrators."). The school board may elect not to renew the contract of a probationary teacher for any reason it deems sufficient, so long as it "is not for constitutionally impermissible reasons." Neb. Rev. Stat. § 79-828(4). Once it is determined that a probationary teacher's contract may not be renewed, the probationary teacher is to be given written notice "that the school board will consider . . . non-renewal of such [probationary teacher's] contract for the ensuing school year." Neb. Rev. Stat. 79-828(3).

Commission. Upon receiving her right-to-sue letter, Kramer initiated the instant lawsuit in the United States District Court for the District of Nebraska. Her Complaint alleges that she was discriminatorily discharged because of her gender.

The case proceeded to trial on May 16, 1997. Kramer presented evidence that she had been disparately treated by the school district's high school principal, Mike Apple. Specifically, she presented testimony by her former co-workers and others, including herself, detailing how Apple had disciplined her more harshly and severely than male teachers for similar misconduct. Likewise, other female teachers testified that they too had been treated inappropriately or unfairly because of their gender. Kramer presented testimony of off-color and/or inappropriate remarks made by both Apple and the school district's superintendent, John Broadbent. She produced written reprimands by Apple from her personnel file which were neither signed nor given to her, in direct contravention of a written school policy.

Additionally, Kramer presented evidence that Apple and Broadbent made material misrepresentations and omissions to the school board in presenting their recommendation that her teaching contract not be renewed. She presented evidence that they misrepresented that her performance evaluations were below average, when five out of six evaluations were average or better. She maintains that Broadbent specifically instructed the school board not to read the evaluations before the hearing and that the board members did not have an opportunity to read the evaluations during the hearing. Kramer adduced evidence that fifteen of the seventeen tenured teachers had signed a letter in support of her, but that Broadbent failed to give the letter to the school board. Finally, she presented evidence that Apple had decided to leave his position as high school principal and had informed Broadbent of his intentions prior to the hearing, but that they purposefully kept this information from the school board.

The school district moved for judgment as a matter of law at the end of Kramer's case and, again, at the close of all of the evidence. It argued that Kramer

4

failed to introduce evidence sufficient to support a finding of intentional gender discrimination. The district court denied both motions.

At the initial jury instruction conference, the district court presented counsel with seventeen proposed jury instructions. No objections were made, though Kramer requested that Instruction No. 2 be amended to substitute the word "corporation" with "political subdivision" to more accurately describe the party-defendant. The school district did not object and the district court agreed to amend the instruction. As amended, Instruction No. 2 provides:

> The parties to this action are the plaintiff, Deborah Kramer and the defendant, Stapleton Public Schools. Throughout these instructions, the plaintiff may be referred to as the plaintiff or by her name. The defendant may be referred to as the defendant or by its name.
>
> In cases such as this, a political subdivision, including Stapleton Public Schools, acts through its agents and employees. An agent or employee of a political subdivision may bind the political subdivision by acts and statements made by the agent or employee while the agent or employee is acting with [sic] the scope of the authority delegated to the agent or employee by the political subdivision. Additionally, the agent or employee may bind the political subdivision by acts and statements made within the scope of the employee's duties as an employee of the political subdivision.

On May 22, 1997, the jury received the case. After several hours of deliberations, the jury submitted the following questions to the district court:

> Under Instruction No. 10(a), does "Stapleton Public Schools" stand for the school board, or the school board and administration?
>
> Under Instruction No. 10(a), the phrase "actions against the plaintiff" - does that include the hearing or all that happened during her

5

period of employment?

Instruction 10(a) provides:

> If you find in favor of the plaintiff under Instruction No. 10, then you must answer the following question in the verdict form: Has the defendant, Stapleton Public Schools, proved by the preponderance of the evidence that the defendant would have taken the same actions against the plaintiff regardless of the plaintiff's gender?

Following a conference with counsel, the district court answered the first question by drafting supplemental Instruction No. 20. Supplemental Instruction No. 20 provides:

> As used in these instructions, Stapleton Public Schools means the defendant, Logan County School District No. R-1, which is a political subdivision governed by the district's school board. Please refer to Instruction No.2.

> Please reread all the instructions and continue your deliberations.

The school district specifically objected to the reference to Instruction No. 2. It also proposed that the district court answer the question by stating simply, "the school board."

The district court answered the second question by substituting a new instruction, Revised Instruction No. 10(a). Revised Instruction No. 10(a) provides:

> If you find in favor of the plaintiff under Instruction No. 10, then you must answer the following question in the verdict form: Has the defendant, Stapleton Public Schools, proved by the preponderance of the evidence that the defendant would have made the same decision not to renew the plaintiff's contract of employment for another year regardless of the plaintiff's gender?

6

On May 23, 1997, the jury returned a verdict in favor of the plaintiff, Deborah

Kramer. The jury awarded her $110,000.00 for lost wages and benefits and $15,000.00 for emotional pain and suffering. The court clerk entered judgment on the jury's verdict in the amount of $125,000.00. Thereafter, Kramer filed a motion to amend the judgment to include an order of reinstatement or of front pay and prejudgment interest. Kramer also filed a motion for her attorneys' fees and costs.

The district court granted in part and denied in part Kramer's motion to amend the judgment. It denied her request for reinstatement, awarded her three years of front pay - reduced to its present value of $71, 288.06 and denied her request for prejudgment interest. The district court also granted in part and denied in part Kramer's motion for attorneys' fees. It awarded her fees and costs, but reduced the amount to $42, 378.18. The district court entered its final judgment on July 9, 1997.

II

For its first point on appeal, the school district argues that the district court erred in denying its motion for judgment as a matter of law.

We review *de novo* the denial of a motion for judgment as a matter of law, applying the same standards as the district court. Feltmann v. Sieben, 108 F.3d 970, 974 (8th Cir. 1997). We "must assume as proven all facts that the nonmoving party's evidence tended to show, give her the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in her favor." Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997). Judgment as a matter of law is appropriate only if, considering the evidence in this manner, no reasonable jury could find for the non-moving party. See Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997)). "[W]e will not set aside the jury's verdict lightly." Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir. 1996).

The school district argues that Kramer's discriminatory discharge claim is insufficient as a matter of law because there is no evidence that the school board engaged in intentional gender discrimination. As the school board was the ultimate

decisionmaker with respect to the non-renewal of Kramer's teaching contract, the school district contends that it is the motivations of the individual board members that are at issue. The school district insists that the school board articulated several legitimate, non-discriminatory reasons for its decision, and that Kramer failed to establish that the reasons given were a pretext for intentional gender discrimination.

Kramer does not suggest that the evidence presented indicates that the individual board members elected to not renew her teaching contract because of her gender. Rather, she argues that because the non-renewal of her contract was initiated by Apple and Broadbent, acting within the scope of their employment, and because Apple and Broadbent made material misrepresentations and omissions in presenting their recommendation to the board, the school district should be liable for their discriminatory conduct. Moreover, Kramer argues that the evidence of her competency and, by contrast, of Apple's and Broadbent's disparate treatment of female teachers, sufficiently undermines the legitimate, non-discriminatory reasons articulated by the school board. Accordingly, Kramer maintains that there was ample evidence to support a finding that the real reason for the non-renewal of her full-time teacher's contract was intentional gender discrimination.

This Court has previously recognized this application of agency principles in the Title VII context. See Kientzy v. Mc Donnell Douglas Corp., 990 F.2d 1051, 1060 (8th Cir. 1993)("[a] reasonable jury could have found that [plaintiff's supervisor] used [a company investigator], the disciplinary committee, and [the director of human resources] as the conduit of his prejudice"); Jiles v. Ingram, 944 F.2d 409 (8th Cir. 1991)("there is no inconsistency between the district court's finding of no intentional discrimination by the two high ranking officials who made the final recommendation and decision to discharge, and its conclusion that the City was guilty of a disparate treatment violation because of the uncontradicted evidence of intentional discrimination by the lesser officials who initiated the discharge proceeding"); see also Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) ("If [the committee] acted as

the conduit of [plaintiff's supervisor's] prejudice--his cat's paw--the innocence of its members would not spare the company from liability.").

The school district argues that this case is distinguishable because the school board conducted an independent fact-finding hearing. See e.g., Long v. Eastfield College, 88 F.3d 300, 307 (5th Cir. 1996)("If [college president] based his decisions on his own independent investigation, the causal link between [plaintiffs' supervisors] allegedly retaliatory intent and [plaintiffs'] terminations would be broken."). Even more troubling is that Kramer, who was represented by counsel at the hearing, did not present any evidence of, nor even mention, her allegations of gender discrimination. Yet, these concerns involve credibility determinations which we do not consider when reviewing a motion for judgment as a matter of law. Triton Corp., 85 F.3d at 345 ("We will not weigh, evaluate, or consider the credibility of the evidence."). The question of whether the school board accurately accessed Kramer's situation or performed a perfunctory review and "rubber stamped" the recommendation to non-renew was appropriately presented to the jury. Assuming the facts as alleged by Kramer were proven, giving her the benefit of all reasonable inferences, and resolving all conflicts in the evidence in her favor, we cannot say that it was unreasonable for the jury to conclude that the non-renewal of her full-time teacher's contract was the result of intentional gender discrimination.

### III

For its second point on appeal, the school district argues that Instruction No. 2, the agency instruction, was not supported by the evidence.

As an initial matter, we note that the school district made no objection to Instruction No.2 at the instruction conference or at trial. Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51; see also Dupre v. Fru-Con Engineering, Inc., 112 F.3d

10

329, 334 (8th Cir. 1997)("to preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record").  In circumstances such as these, we will reverse only if the instruction amounts to plain error.  Dupre, 112 F.3d at 333; Ryther, 108 F.3d at 847.  Under plain error review, an instruction is grounds for reversal "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected."  Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995) (en banc).

As we have already determined that agency principles can and do apply in the Title VII context, Instruction No. 2 was not error - let alone plain error.

## IV

For its third point on appeal, the school district argues that Supplemental Instruction No. 20, given in response to a question from the jury, placed undue emphasis on the erroneous agency instruction.  As the school district specifically objected to the express reference to Instruction No. 2 at trial, this claim of error is properly before us.  Kostelec v. State Farm Fire and Casualty Co., 64 F.3d 1220, 1225 (8th Cir. 1995).

"We review the district court's jury instructions for abuse of discretion and on review must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury."  Kim v. Nash Finch Co., 123 F.3d 1046, 1057 (8th Cir. 1997)(internal quotations omitted).  We will reverse on instructional error only if we find that the error "affected the substantial rights of the parties."  Id.

Because we conclude that Instruction No. 2 was properly given, we do not find any error in Supplemental Instruction No. 20.  If, however, undue emphasis was placed upon the agency instruction, we believe that any resulting error was harmless.

## V

For its final point on appeal, the school district argues that the district court was

without jurisdiction to award Kramer $71, 288.06 in front pay because it exceeds the statutory limit on compensatory damages for "future pecuniary loss." See 42 U.S.C. § 1981a(b)(3). Whether a monetary award of front pay is subject to the compensatory damages cap in Title VII is an issue of first impression in this Court.

The Sixth Circuit has held that front pay is a legal remedy subject to the cap. See Hudson v. Reno, 130 F.3d 1193, 1202-04 (6th Cir. 1997); Hamlin v. Charter Township of Flint, 965 F. Supp. 984, 987 (E.D. Mich. 1997). Applying general canons of statutory construction, the Sixth Circuit determined that the common, ordinary meaning of the term "future pecuniary loss" is "an amount of money which will be lost at a later time." Hudson, 130 F.3d at 1203. Accordingly, the Sixth Circuit concluded that "'front pay', by both its definition and purpose in the law, is a 'future pecuniary loss' because it is a monetary award for the salary that the employee would have received but for the discrimination." Id.

Unlike the Sixth Circuit, however, this Court has always viewed front pay as a form of equitable relief. See Newhouse v. McCormick & Co., 110 F.3d 635, 641 (8th Cir. 1997)("Front pay is an equitable remedy, which the district court in its discretion may award under the [civil rights statutes] to make the injured party whole.")(*quoting* Smith v. World Insurance Co., 38 F.3d 1456, 1466 (8th Cir.1994)). In our view, front pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible. See e.g., Newhouse, 110 F.3d at 641; Philipp v. ANR Freight System, Inc., 61 F.3d 669, 674 (8th Cir. 1995). This subtle distinction is more than semantics because section 1981a(b)(2) provides that, "[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964." 42 U.S.C. § 1981a(b)(2)(emphasis added). We therefore, respectfully, disagree with the Sixth Circuit and conclude that front pay is an equitable remedy excluded from the statutory

12

limit on compensatory damages provided for in section 1981a(b)(3).

Accordingly, we affirm.

RICHARD S. ARNOLD, Circuit Judge, concurring.

I join Judge Limbaugh's thorough opinion for the Court fully, but write separately to offer a few thoughts about our dissenting colleague's observations, especially his invocation of our recent opinion in Lacks v. Ferguson Reorganized School Dist. R-2, 147 F.3d 718, suggestion for rehearing en banc denied, _____ F.3d _____ (8th Cir. 1998) (9 - 2 vote).

Let me begin by indicating the points on which I agree with the dissent. All of the following is true: Ms. Kramer presented no evidence of sex discrimination at the hearing before the school board; the hearing was full and fair; there is no evidence that any member of the board was personally biased; the board is the sole authority empowered to make a non-renewal decision; Ms. Kramer did not exercise her right under state law to have the board's decision reviewed by a state court; and, if she had gone to a state court, the review would have been limited to the record of the hearing before the school board and would have been governed by a deferential standard. In my view, none of these points is fatal to Ms. Kramer's action under federal law. There is no requirement that administrative remedies, other than those before the EEOC or a state counterpart agency, be exhausted as a condition precedent to a suit in a federal court under Title VII. That the plaintiff did not claim sex discrimination before the school board may lessen the credibility of her later assertions, but that was a question for the jury, as Judge Limbaugh rightly says, ante, at 9. Ms. Kramer was under no obligation to pursue any state-law remedy. She has an independently created federal right to sue under Title VII, and in that forum the defendant's motives are reviewed de novo, though the burden of persuasion of course remains always with the plaintiff. And, finally, the action is against the school district, the governmental

13

unit, not against the members of the school board or the board as an entity. Certainly the board's good motives, uncontested here, are relevant, but they are not invariably dispositive, as our cases, see ante, at 8-9, clearly state.

Crucial to the present case is evidence that the two top administrators of the district, Mr. Apple and Mr. Broadbent, were motivated by gender in recommending the non-renewal of plaintiff's contract. Without this recommendation, the school-board hearing would never have occurred. Some of the facts supporting these conclusions are recounted in Judge Limbaugh's opinion. Among other things, there was evidence, apparently persuasive to the jury, that the two top administrators treated women teachers less favorably than men, and that coarsely disparaging remarks, the details of which need not be recounted, were made about women teachers. There was also evidence, presented by the defendant, that men and women received equal treatment. It was up to the jury to decide which side to believe. In addition, the jury was given a chance to decide whether Ms. Kramer would have been terminated in any event, regardless of gender, and it found that she would not have.

With deference to my dissenting colleague, I do not think that any of this reasoning, in the context of the record in this case, is inconsistent with our opinion in Lacks. (As it happens, both Judge Hansen and I were members of the Lacks panel.) As I read the Lacks opinion, it is very fact-specific. It does not erect any general rule that a fair hearing before an impartial board immunizes a school district from the consequences of discrimination on the part of the district's administration, if that discrimination is the proximate cause of adverse employment action. The evidence of bias on the part of the administrators in Lacks was very weak, and the misconduct of the plaintiff teacher (or what the board regarded as misconduct) was egregious. In those circumstances, it was our view that the jury verdict was wholly unreasonable. Lacks is not authority compelling us to overturn the jury verdict in the quite different circumstances of the present case.

14

DAVID R. HANSEN, Circuit Judge, dissenting.

I respectfully dissent. In my view, Ms. Kramer has produced no evidence which can support a reasonable inference of discrimination on the part of the Stapleton school board, and a verdict in her favor therefore cannot stand. "In reaching that conclusion, [I am] mindful that the evidence must be viewed in the light most favorable to the jury's verdict, and that all <u>reasonable</u> inferences in support of the verdict must be allowed." <u>Lacks v. Ferguson Reorganized Sch. Dist. R-2</u>, 147 F.3d 718, 724 (8th Cir. 1998). The instant opinion correctly states, "Kramer does not suggest that the evidence presented indicates that the individual board members elected not to renew her teaching contract because of her gender." <u>Supra</u> at 8. Since Ms. Kramer sued to recover damages for discriminatory discharge by the school board, one might suspect this failure should be fatal to her case. However, if she could show that unlawful gender discrimination on the part of the administrators who initially recommended her separation to the school board poisoned any subsequent board action, so that the board's decision to terminate her simply "rubber-stamped" the administrators' gender-based recommendation, the jury's verdict could stand. <u>See Kientzy</u>, 990 F.2d at 1057. But allowing her to prevail on the facts of the present case is a great departure from our precedents. The Stapleton school board did not, by virtue of exercising its statutory authority to hire and fire teachers, thus become a cat's paw, "one used by another to accomplish his purposes." <u>Webster's International Dictionary</u>, 354 (3d Ed. 1986). Unfortunately, the court's opinion today transforms our "cat's paw" cases into a cat o' nine tails that will be used against every school district whose board provides a thorough, independent, statutorily mandated, full-blown adjudicatory review before acting on termination recommendations.

To present a submissible "cat's paw" claim, Ms. Kramer must proffer evidence tending to demonstrate "that the school board was influenced by the bias of the administrators, and that the board consequently served as the conduit, or 'cat's paw,' of the . . . animus of the school administration." <u>Lacks</u>, 147 F.3d at 725. Since Ms.

15

Kramer "produced no evidence that the school board deferred to the opinion or judgment of [the administrators] in making its determination," id., she has not shown that the board was "influenced" by any gender bias on the part of the administrators, except to the extent that the school board resolved the dispute raised by the termination recommendation -- which, of course, Nebraska law requires the board to do. The elected Stapleton school board accorded Ms. Kramer her statutory hearing at which she was represented by counsel and presented witnesses and evidence on her own behalf, and cross-examined witnesses who appeared against her. There is not a hint that the hearing itself was other than full and fair. The trial-type hearing continued for nearly five hours before the board retired, like a jury, into executive session to consider the evidence and arguments which had been presented. Here, as in Lacks, "no members of the administration were present during the board's deliberations." Id.

Ms. Kramer claimed at trial that bias infected the hearing, because the administrators "made material misrepresentations and omissions in presenting their recommendation to the board," supra at 8, and that these errors poisoned the board's decision. She contends that Principal Apple and Superintendent Broadbent misrepresented to the school board the contents of her performance evaluations. The testimony to which she refers in fact indicates that, when Mr. Broadbent recommended that the school board send a nonrenewal letter to Ms. Kramer, he requested that the board members not review her evaluations until a hearing was held, and the evaluations were presented at the hearing in Ms. Kramer's presence. (Trial Tr. at 987, 996-97.) Ms. Kramer does not claim that she made any effort at the hearing to correct any alleged misrepresentations made to the school board, or to expose any unfair, gender-based treatment. She most certainly did not indicate to the school board that either of the administrators had intentionally misled the board about her record because of a bias against women. It strains credulity to its breaking point to believe that, over the course of a long adversarial hearing and while represented by counsel, Ms. Kramer would not challenge what she believed to be false statements

16

made by her supervisor, or make the charge that the statements were in fact bottomed on gender bias. In any case, the evaluations themselves do not indicate gender bias, but contain legitimate, non-discriminatory reasons for not renewing Ms. Kramer's contract -- the very reasons proffered at trial. The board considered these evaluations in making its decision. This evidence does not require us to make a credibility determination. More importantly, it does not raise an inference that the board was influenced by any hidden, undisclosed, and uncomplained about underlying gender bias on the part of the principal and superintendent.

Ms. Kramer asserts that her evaluations reflected her supervisor's bias because they contained criticisms for misconduct which similarly situated male teachers did not receive. However, to show bias through disparate treatment, Ms. Kramer must demonstrate that similarly situated male teachers were treated differently than she. See Ward v. Proctor & Gamble Paper Prod. Co., 111 F.3d 558, 560-61(8th Cir. 1997). She was a probationary employee but she alleged disparate treatment of tenured male teachers. Needless to say, tenured teachers are not similarly situated to probationary teachers. See Neb. Rev. Stat. §§ 79-828(4), 79-829 (1996). Further, many of her specific allegations were completely and unequivocally refuted at trial, where administrators, board members, and the teachers themselves all testified that the male teachers had in fact been disciplined over misconduct for which Ms. Kramer claimed they had not.

Ms. Kramer also claims that Mr. Broadbent possessed a letter, written in her support and signed by many of the tenured teachers in Stapleton, which he did not present to the board. Mr. Broadbent initially testified that he could not recall passing that letter on (Trial Tr. at 655); but then testified that he did submit it to the board. (Id. at 888-89.) Mr. Apple also testified that the letter was presented to the board. (Id. at 869.) Even if neither of the administrators had submitted the letter to the board, Ms. Kramer was present at her hearing and represented by counsel. She called as witnesses on her behalf many of the teachers who signed the support letter, and she

17

herself had a copy of it. If the board did not have the letter to consider as part of all the evidence regarding Ms. Kramer's employment when it retired to deliberate, the reason is Ms. Kramer's own negligence. Her proffer of evidence regarding the support letter does not permit an inference of gender discrimination by the Stapleton school board.

The school board members testified at trial that Ms. Kramer presented no indication of gender bias to them, for their consideration in reviewing her employment record. Member David Jones testified, "There was nothing brought up of any sexual innuendo or discrimination at that hearing in April." (Trial Tr. at 683.) When asked, "Did you hear anything like [gender bias] at that hearing on April 28th of 1993?" member Linda Licking responded, "No, none of it." (Trial Tr. at 978.) Still, Ms. Kramer insists that some hidden bias (which she joined in keeping hidden by not bringing it to the board's attention) infected the board. She would have us believe that, despite the hearing, and despite her presentation of her own witnesses to the school board, the school board simply "rubber stamped" the recommendation not to renew her contract. All evidence presented belies this, and the jury's inference to the contrary is unreasonable.

After taking hours of evidence, the board retired into executive session with two proposed motions before them, one to retain Ms. Kramer; one to terminate her, with six reasons listed in support of the termination decision, a situation not unlike a jury retiring with special verdict forms to consider and complete. Upon review of the evidence, the board unanimously voted to terminate. They did not simply adopt the proposed termination motion, however. Their review of the evidence led them to strike two of the proposed reasons for termination. Ms. Kramer's trial counsel pointed out the very evidence which demonstrates the board did not "rubber-stamp" the recommendation. He asked board member Jones on cross-examination, "And those lines were stricken [sic] after the board discussed the resolution, listened to the evidence and decided how to decide this matter, correct?" Answer: "That's correct."

18

(Trial Tr. at 694.) "On this record, the inference that the school board acted because of [plaintiff's gender] is wholly unreasonable." Lacks, 147 F.3d at 726.

Nebraska law permits Ms. Kramer to appeal the board's decision to state district court. See Neb. Rev. Stat. § 79-833; Schaffert v. Lancaster County Sch. Dist. No. 0001, 581 N.W.2d 444 (Neb. Ct. App. 1998). She elected not to do so. Instead, in my view, having sandbagged the board by not revealing to the board at the nonrenewal hearing her belief that the Superintendent's recommendation to terminate her was actually based on her sex, she then proceeded to blindside the board by filing this Title VII suit in federal court. Lest the reader believe that my analogy, comparing the role of the school board at Ms. Kramer's hearing to that of a jury, is stretched, under Nebraska law the board's termination decision would have been reviewed under a deferential standard very similar to that used to review a jury's verdict. See Cox v. York County Sch. Dist., 560 N.W.2d 138, 142-43 (Neb. 1997); Boss v. Filmore Sch. Dist. No. 19, 559 N.W.2d 448, 452-53 (Neb. 1997). Her state court appeal would have been limited to the record made before the school board, id., which, of course, because she completely failed to complain about it, contained not a whiff of sex discrimination at play.

After a thorough review of the record, I find no evidence that the board's review was either perfunctory or pro forma, but rather it was a thorough review, conducted by independently elected school board members conscientiously discharging their statutory duty to adjudicate the issue set before them, with no taint of gender bias. In my view, the admittedly full and fair adjudicatory hearing by independent fact-finders who possessed no personal bias (let alone a sex-based one) and who had an opportunity to hear all sides of the termination issues, served to break any causal connection between the alleged underlying sex-based bias of the two top administrators and the final decision. Here, because there was no evidence of "rubber stamping" there can be no "cat's pawing." "The evidence in this case unequivocally shows that the board made an independent determination as to whether [Kramer]

19

should be terminated and did not serve merely as a conduit for the desires of school administrators. [Kramer's] 'cat's paw' theory must therefore fail." <u>Lacks</u>, 147 F.3d at 725. Our recent precedent in <u>Lacks</u> demands that we set aside the jury's verdict. In my view, "the exhaustive hearing given [Kramer] by the board leave[s] no room for anyone reasonably to conclude that [Kramer] was [terminated] because of her [gender]." <u>Id.</u> at 726. I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.